HENRY'S DRIVE-IN, INC. *v.* PAPPAS ET AL.

[No. 206, September Term, 1971.]

*Decided February 9, 1972.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Frank H. Weller, Jr.*, with whom were *Ober, Grimes & Shriver* on the brief, for appellant.

*Robert E. Sharkey,* with whom were *Evan A. Chriss* and *Gordon, Feinblatt & Rothman* on the brief, for appellees.

SINGLEY, J., delivered the opinion of the Court.

Henry's Drive-In, Inc. (Illinois Henry's) has appealed from a summary judgment for $3,999.84 entered against it in the Superior Court of Baltimore City, contending that the lower court misapplied the applicable statute of limitations. Because we think Illinois Henry's is at least partially right, we shall modify the judgment.

Seeds of the controversy were sown in 1959 when Mrs. Kalliope Pappas, her husband and other members of her husband's family, to whom we shall refer collectively as "the Lessor," the owners of a drive-in restaurant site on Old Annapolis Road in Glen Burnie, Maryland, leased the land and the improvements to be erected to Henry's Drive-Ins of Maryland, Inc., (Maryland Henry's), apparently a franchisee of Illinois Henry's. The lease, which was for a term of 12 years from the date of the completion of the restaurant which the Lessor proposed to build on the leased land, called for a monthly rental of $650.00. It also provided that Maryland Henry's would post a security deposit of $7,800.00 which would be applied by the Lessor in satisfaction of the last year's rent, interest at the rate of 3% to be paid by the Lessor to Maryland Henry's during the lease term. Maryland Henry's also agreed to pay all real estate taxes in excess of $135.00 per year, as additional rent.

The latter covenant, which is at issue here, provided:

> "Lessor will pay all real estate taxes and assessments levied or assessed against the demised premises during the term hereof. If, during any lease year of the term hereof, real estate taxes payable during such lease year shall exceed One Hundred Thirty-five Dollars ($135.00) Lessee agrees to pay to the Lessor, as additional rental, upon presentation of receipted tax bills there-

for, the amount of such excess. The Lessee shall have the right to contest any levy of such taxes in its behalf or in behalf of the Lessor in accordance with the provision of the laws relating to such contests. It being the intention of this Paragraph that the Lessee shall pay for all taxes for improvements on the demised premises and on the land over the amount now paid by Lessor."

Virtually contemporaneously with the signing of the lease, Illinois Henry's executed a guaranty agreement, under which it guaranteed the payment of rent and the performance of the other lease covenants. In 1967, apparently in connection with the Lessor's making certain improvements which Maryland Henry's desired, and for which Maryland Henry's had agreed to pay additional rent, Illinois Henry's reaffirmed in writing its undertaking to guarantee the payment of the original rent of $7,800.00 per year and the performance of the covenants of the lease.

Illinois Henry's argues that a comparison of the language of its first guaranty:

"* * * hereby guarantees the payment of the Rents and the performance of all other covenants and agreements by the Lessee in the within Lease contained * * *."

with that of the second,

"* * * does hereby reassert and reaffirm that it will continue to guarantee the payment of the rent ($7,800.00, per year) and the performance of the covenants called for in the lease * * *."

leads unerringly to the conclusion that the scope of the first guaranty was narrowed by the second, which limited the guarantor's liability to the basic rent reserved and did not extend to the reimbursement for excess taxes, as additional rent.

We remain unpersuaded. If one reads on, it becomes apparent that Illinois Henry's was only endeavoring to limit its liability to the base rent of $7,800.00, for the second guaranty continues,

"* * * although the Lessee has agreed to pay additional rental for the improvement, and that the guarantor hereby covenants that the original Guaranty attached to the aforementioned Lease shall remain in full force and effect."

Its guaranty of the performance of the lease covenants remained unchanged. We cannot say that this language modified, much less negated, the guaranty that the covenant to pay excess taxes would be performed.

Commencing in 1963, real estate taxes on the leased premises exceeded $135.00 in each year, by the following amounts:

| | |
|---|---|
| 1963 | $440.50 |
| 1964 | 512.75 |
| 1965 (to 30 June) [1] | 193.50 |
| 1965-66 | 576.36 |
| 1966-67 | 576.36 |
| 1967-68 | 590.93 |
| 1968-69 | 767.00 |
| | $3,657.40 |

For some unexplained reason, no statement of the amount due- was sent to Maryland Henry's until sometime after 1 November 1968. Payment was not made, and by the time suit was brought on 30 June 1970, excess taxes for 1969-70 in the amount of $810.44 had been paid by the Lessor, increasing the amount claimed to $4,467.84.

Suit for this amount was brought by the Lessor against Maryland Henry's, as lessee, and Illinois Henry's, as guarantor, and was accompanied by a motion for sum-

---

1. Commencing 1 July 1965, real estate taxes were levied for fiscal years beginning 1 July and ending 30 June.

mary judgment. Both defendants pleaded the general issue and specially pleaded limitations, and both filed affidavits in opposition to the motion for summary judgment, denying that proper demand had been made within the period of limitations, and claiming a recoupment (which they characterized as a set-off) by reason of the Lessor's failure to make payments of 3% interest amounting to $234.00 annually on the security deposit of $7,800.00 as required by the lease.

The trial court concluded that the demand required by the lease had been made for the first time on 26 June 1970, four days before suit was brought, for the payment of excess taxes in the amount of $4,467.84, and that limitations ran from the date when payment was demanded, but that the recoupment claimed for interest on the security deposit was barred by limitations, except for the three year period immediately preceding the assertion of the claim. This allowance was limited to two years' interest, amounting to $468.00, because the court determined that the security deposit would be used in the last year of the lease term to satisfy the rent obligation.

We do not see it quite that way. The applicable statute of limitations, Maryland Code (1957, 1968 Repl. Vol.) Art. 57, § 1 provides, in part:

> "All actions * * * brought to recover rent in arrear, reserved under any form of lease, * * * shall be commenced, sued or issued within three years from the time the cause of action accrued; * * *."

When did the Lessor's cause of action accrue? The answer is found in the lease provision,

> "* * * Lessee agrees to pay to the Lessor, as additional rental, *upon presentation of receipted tax bills therefor,* the amount of such excess." (Emphasis supplied)

It is palpably clear that the earliest date when the Lessor

could have demanded payment was the first day on which he could have exhibited a receipted tax bill. Because the presentation of a receipted bill was a necessary element of a valid demand, it would seem, ordinarily, that it would be payment of taxes by the Lessor which would start the running of the statute. It is certainly true, as the Lessor contends, that the general rule is that when performance is conditioned on demand, limitations do not commence to run until a demand is made, for it is only then that a cause of action accrues, *Rhind v. Hyndman*, 54 Md. 527, 530-31 (1880) ; *Fells Point Sav. Inst. of Baltimore v. Weedon*, 18 Md. 320, 326 (1862). There are instances, however, where the general rule should not be laid on with a heavy hand, since the primary consideration underlying a statute of limitations is one of fairness to the defendant, *Feldman v. Granger*, 255 Md. 288, 297, 257 A. 2d 421 (1969) ; *Bertonazzi v. Hillman,* 241 Md. 361, 367, 216 A. 2d 723 (1966).

The modern view is that when the maturity of the cause of action is dependent upon the performance of an act within the control of the plaintiff, limitations will run from the time the plaintiff could have acted, without a demand being made. If this were not so, the plaintiff could indefinitely postpone the statutory bar, *Developments in the Law—Statutes of Limitations,* 63 Harv. L. Rev. 1177, 1209 (1950) [citing *Reading v. Koons,* 271 U. S. 58, 70 L. Ed. 835, 46 S. Ct. 405 (1925)].

Additionally, the provision of the lease requiring Maryland Henry's to pay excess taxes, vested a correlative right in the lessee :

"* * * to contest any levy of such taxes in its behalf or in behalf of the Lessor in accordance with the provision of the laws relating to such contests."

To adopt the construction urged upon us by the Lessor— that limitations commenced to run when the demand was

made on 26 June 1970—would effectively nullify the obvious intention of the parties. If this intention is to be given effect by a reasonable interpretation of the lease provision, limitations would have to run either from the date when taxes became due and payable, or from the last day they could have been paid without incurring interest or penalty, whether or not formal demand was made by the Lessor. For the purpose of this case, it is not necessary for us to decide whether limitations began to run from the first day on which the Lessor could have paid the tax bill (presumably a date early in July) or from the day when the taxes were in fact paid (in September, when no interest or penalty was imposed), since the result is the same in either case.

It is quite apparent that the Lessor's statement of 1 November 1968, sent to Maryland Henry's, to which no receipted tax bills were attached, was not the sort of demand contemplated by the lease. The first conforming demand was a letter of 26 June 1970 from the Lessor's counsel to Maryland Henry's. As of that date, and as of the date when suit was brought, there were only three tax bills which had been paid within the three year period: those for 1967-68, 1968-69, and 1969-70, involving excess taxes in the amount of $2,168.37. Limitations had run against all prior years.

The Lessor complains that Illinois Henry's is attempting to assert a defense of limitations which was personal to Maryland Henry's. This, however, is not the whole story. A guarantor may rely on limitations too, which run from the date when the obligee makes a payment which should have been made by the principal, *Southern Maryland Oil Co. v. Texas Co.*, 203 F. Supp. 449 (D. C. Md. 1962) (applying Maryland law).

The problem as regards the proper amount of the credit claimed by reason of the Lessor's failure to pay interest on the $7,800.00 security deposit is somewhat more troublesome. The lease provided that 3% interest would be "payable annually." It seems to be conceded

that interest had not been paid for eight years. While the record does not disclose on what date payment had customarily been made, it is obvious that the first payment should have been made on 4 February 1960, 12 months from the date when the deposit was made and annually thereafter.

When Illinois Henry's advanced the claim for recoupment only the payments due 4 February 1968, 1969, and 1970, aggregating $702.00, were not barred by limitations, and it seems to us that these were clearly collectible. We cannot accept the lower court's rationalization —that "the security deposit was 'paid for the rent for the last twelve months of this lease' "—as a reason why there could be no recovery for interest due on 4 February 1970. The plain fact is that the interest due 4 February 1970 accrued during the 12 months' period which commenced 5 February 1969. The possibility that the security deposit may have been used for the payment of rent at some time subsequent to 4 February 1970 has nothing whatever to do with the Lessor's liability for the payment of interest on that date.

The resolution of the problems posed by this case would have been infinitely more difficult were it not for a *concessum* made by the Lessor's counsel at oral argument. The 1959 lease was under seal, and it could be argued that the Lessor's right to demand excess rent from Maryland Henry's, and Maryland Henry's right to claim a credit for interest on the security deposit, might be governed by the 12 year period of limitations made applicable to specialties by Code, Art. 57, § 3 and not by the three year period provided for by Art. 57, § 1. There is, however, authority for the proposition that since recovery of arrearages of rent is specifically mentioned in § 1 and not in § 3, a lease cannot be regarded as a specialty to which § 3 applies, *Towson Gardens, Inc. v. Small et ux.*, Law No. 6984-11-16 (Cir. Ct. Harford County, decided 18 March 1968) [Daily Record, Baltimore, 25 May 1968]; *see also* 1 Wood, *Limitation of Actions* § 32, at

126 (4th ed. 1916). However, as we have noted, no appeal was taken by Maryland Henry's.

When Illinois Henry's appealed, the Lessor attempted to sustain the result reached below by contending that the agreement of guaranty, being also under seal, fell within the 12 year statute. Illinois Henry's countered with the contention that this point had not been presented below and could not be raised on appeal, Maryland Rule 885, *Food Fair Stores, Inc. v. Greeley,* 264 Md. 105, 285 A. 2d 632 (1972). Alternatively, Illinois Henry's argued that whether the mere affixing of a corporate seal to a document is intended to alter the period of limitations may be made the subject of extrinsic proof, *General Petroleum Corp. v. Seaboard Terminals Corp.,* 19 F. Supp. 882 (D. C. Md. 1937), 23 F. Supp. 137 (D. C. Md. 1938) (applying Maryland law) ; *compare Conowingo Land Co. v. McGaw,* 124 Md. 643, 93 A. 222 (1915) *with Smith v. Women's Medical College,* 110 Md. 441, 72 A. 1107 (1909).

An examination of the copies of the guaranty agreements submitted with the affidavit in support of the Lessor's motion for summary judgment disclosed that while the attestation clause recited, in each case, that the corporate seal had been affixed, no corporate seal appeared on the copies. It was at this point that counsel for the Lessor conceded that the three year period of limitations was applicable in fixing Maryland Henry's liability. As a consequence, our consideration was limited to the narrow question whether the requisite demand was made within this period. We have concluded that timely demand was made on Maryland Henry's for only the last three payments and that in the posture in which the case comes to us, since limitations commenced to run on Illinois Henry's guaranty—which cannot under the circumstances be viewed as a specialty—from the date when the Lessor made a payment which should have been made by Maryland Henry's, Illinois Henry's liability is similarly limited, *Southern Md. Oil Co. v. Texas Co., supra,* 203 F. Supp. 449.

432

Accordingly, the judgment will be modified, limiting the Lessor's recovery from Illinois Henry's as guarantor to excess taxes paid in September 1967, 1968 and 1969 in the aggregate amount of $2,168.37, against which unpaid interest in the amount of $702.00 will be credited, resulting in a judgment of $1,466.37. Since Maryland Henry's did not appeal, we shall not disturb the judgment against it. Had an appeal been taken, however, the judgment against it would have been similarly modified.

*Judgment absolute in favor of Kalliope Pappas et al. against Henry's Drive-In, Inc., for the sum of $3,999.84 with interest from 14 July 1971 and costs modified by substituting $1,466.37 for $3,999.84, and judgment, as modified, affirmed; costs on appeal to be paid one-half by appellant and one-half by appellees.*