773 A.2d 488

**Robert TIPTON**

v.

**PARTNER'S MANAGEMENT CO.**

**No. 117, Sept. Term, 2000.**

Court of Appeals of Maryland.

June 6, 2001.

Charles E. Kountz, Jr., Baltimore, on brief, for petitioner.

Minda F. Goldberg (Stuart L. Sagal of Wartzman, Omansky, Blibaum, Simons, Cassin & Sagal, P.A., on brief) Towson, for respondent.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

CATHELL, Judge.

On June 24, 1999, Partner's Management Company, respondent, filed a claim in the District Court of Maryland sitting in Baltimore City for rent arrears plus interest and attorney's fees against Robert Tipton, petitioner. Respondent and petitioner had entered into a lease agreement for an apartment and respondent alleged that petitioner had violated the lease agreement. After denying petitioner's Motion to Dismiss, the District Court entered a judgment for respondent.

Petitioner appealed to the Circuit Court for Baltimore City. The Circuit Court affirmed the decision of the District Court. Petitioner then filed a Petition for Writ of Certiorari with this Court. We granted the petition. Petitioner has presented three questions:

1. Did the Circuit Court[1] err in ruling that the lease agreement was a contract under seal so as to create a specialty instrument, and thus make the applicable period of limitations twelve years, under § 5–102(a)(5) of the Courts and Judicial Proceedings Article of the Maryland Code, rather than the three-year period for simple contracts, under § 5–101 of that Article?

2. Did the Circuit Court err in failing to address whether the application of § 5–102(a)(5) of the Courts and Judicial Proceedings Article is repugnant to § 8–207 of the Real Property Article of the Maryland Annotated Code?

3. Did the Circuit Court err in failing to address whether the application of § 5–102(a)(5) of the Courts and Judicial Proceedings Article [is] repugnant to § 8–208 of the Real Property Article of the Maryland Annotated Code?

We answer yes to question one. We hold that a residential lease agreement, even if the lease agreement has the word seal affixed, is subject to the three-year limitation period enunciated in Maryland Code (1973, 1998 Repl.Vol.), section 5–101 of the Courts and Judicial Proceedings Article.[2,3] Because we are answering yes to question one, we do not need to resolve questions two and three.

## I. Facts

On December 12, 1991, petitioner entered into a lease agreement (hereinafter lease) with respondent[4] to rent an apartment in Highland Village Apartments. The lease was for

---

**1.** In the petition for Writ of Certiorari, petitioner asked whether the Circuit Court erred in questions one through three. In petitioner's brief to this Court, he changed his court reference in questions one through three from the Circuit Court to the District Court.

**2.** All references to section 5–101 are to this section.

**3.** Any statute of limitations can be waived by agreement of the parties. Generally, the affixation of a seal, alone, will not constitute such a waiver.

**4.** Respondent was acting as the agent for Highland Limited Partnership, the owner of Highland Village Apartments.

a period of one year and was to commence on January 1, 1992 and end on December 31, 1992. Just above the signatures of the parties on the pre-printed form lease, it stated that: "IN WITNESS WHEREOF the parties hereto have set their hands and seals the day and year first above written." Adjacent to the signatures at the end of the signature line was the word "SEAL" in parenthesis. There was no language in the lease in respect to statutes of limitation.

On November 24, 1992, petitioner was evicted from the apartment for a failure to pay rent to respondent.[5] Respondent subsequently rented the apartment to other tenants and on August 12, 1993, respondent sent a letter to petitioner that referred to all of the expenses that respondent claimed it had incurred and the amount owed to respondent by petitioner. After not receiving a payment from petitioner, respondent turned petitioner's account over to a collection agency.

On June 24, 1999, the collection agency, on behalf of respondent, filed a claim in the District Court of Maryland sitting in Baltimore City. Petitioner filed a Motion to Dismiss with the District Court, stating that respondent had violated section 5–101 [6] because it had waited approximately seven years to file a Complaint in the District Court. Respondent stated that the three-year statute of limitations of section 5–101 did not apply because the lease was under seal, thus, according to respondent, it was a specialty that was controlled by section 5–

---

**5.** At trial, petitioner testified that although he signed the lease, he did not live in the apartment. Petitioner signed the lease to enable a friend, Patricia Gunther, to live in the apartment. Ms. Gunther testified at trial that she moved out of the apartment at the end of October 1992. She also testified that she sent a certified letter to Highland Village Apartments, informing them that she would be moving out of the apartment at the end of October. Ms. Gunther could not provide the certified letter receipt or a copy of the letter at trial.

**6.** Section 5–101 states:
   **§ 5–101. Three–year limitation in general.**
   A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced.

102(a).[7] There was no allegation that the parties specifically agreed to a twelve-year period of limitations, nor was any evidence so indicating introduced. The claim of the longer limitation period relied exclusively on the affixation to the lease of the word "Seal." The District Court denied petitioner's Motion to Dismiss, stating that:

> I believe that under the current law, I must rule in favor of the Plaintiff. I personally do not think that's fair or correct. And I'm surprised that the Legislature is allowing this to happen. Now, that's this Court's interpretation of the law.
>
> . . .
>
> But at this point, I believe that the law in the State of Maryland is that if a contract is under seal—and of course my personal feelings cannot dictate what I do in a case, I took an oath to follow the law, and I will do that today—and I believe that the law states that if a contract is under seal, that there is a twelve year Statute of Limitations as opposed to a three year Statute of Limitations. That being the law, the motion to dismiss based on the Statute of Limitations is denied.

After the hearing on the Motion to Dismiss, a trial was held. The District Court, after receiving evidence and hearing witness testimony,[8] entered a judgment in favor of respondent for $3,828.59 plus attorney's fees of $574.29.

---

7. Section 5–102, in relevant part, states:

    **§ 5–102. Specialties.**

    (a) *Twelve-year limitation.*—An action on one of the following specialties shall be filed within 12 years after the cause of action accrues, or within 12 years from the date of the death of the last to die of the principal debtor or creditor, whichever is sooner:

    (1) Promissory note or other instrument under seal;
    (2) Bond except a public officer's bond;
    (3) Judgment;
    (4) Recognizance;
    (5) Contract under seal;  or
    (6) Any other specialty.

8. The evidence in no way explained why approximately six years elapsed between turning the matter over to the collection agency and

Petitioner filed an appeal with the Circuit Court for Baltimore City. On October 23, 2000, the Circuit Court issued a Memorandum Opinion and Order in which it affirmed the decision of the District Court. The Circuit Court held that the lease was a contract under seal, thereby making the lease a specialty controlled by section 5–102, the twelve-year statute of limitation. Petitioner then filed in this Court a Petition for Writ of Certiorari.

## II. Discussion

We hold that actions for rent arrears under any kind of residential lease must be filed in compliance with section 5–101.[9] We are first going to examine the history of the use of the word seal in real property and other contract contexts. Then we will examine the legislative history of section 5–101 and analyze whether the legislative intent is for residential leases to which the word seal is affixed to be controlled by section 5–101, the three-year limitation period, or section 5–102, the twelve-year limitation period.

### A. Seal

The use of the word seal on documents involving the conveyance of interests in real property (whether fee simple or lessor interests), has historically had a separate purpose from that involving contracts of a different nature. While the use of the word seal, in an appropriate context, could also create a specialty, historically its primary use in the conveyancing of property interests, even including leasehold interests, was to create a presumption of adequate consideration and a presumption of validity. As long ago as 1863, we stated in *Colvin v. Warford*, 20 Md. 357, 395–96 (1863), a case involving the validity of a prior conveyance in a testamentary context, that:

---

the filing of suit, nor what collection activities, if any, were taken during that period.

**9.** *But see* n. 3.

It also appears that the testatrix, as only surviving child and legal representative of her father, having become entitled to, and taken possession of this property at his decease, afterwards, in 1823, purchased the reversion from Lloyd N. Rogers, the sole heir at law of Nicholas, and ceased to pay the rent reserved from that time, but the written paper purporting to be a deed and duly recorded as such, by which the conveyance of the reversion to the testatrix was sought to be made, *was not sealed by the grantor.*

The appellant claiming this property as leasehold under the will of 1848, which by probate had become conclusive as to personal estate, objected to this prayer on the ground that these facts were sufficient to explain the possession of the testatrix, and bar the legal presumption of a grant in fee.

... In this case the testatrix entered into the possession of the property in question under a leasehold title, and although she afterwards became the purchaser of the reversion from Rogers, she appears not to have obtained an actual conveyance of it by a valid deed [the absence of a seal making it defective]. On the contrary, the instrument that was intended to effect the transfer was wholly inoperative for that purpose, and whatever effect it had in establishing an equitable claim to the property, it clearly shows the legal title to be still outstanding [because the deed of the reversion to her was defective because of the absence of a seal]. We must therefore assume, on the authority of the cases cited, that the possession of the testatrix was maintained, as it was taken, under her leasehold title, and that it was not adverse to the outstanding legal title to the reversion. [Emphasis added.]

In other words, the absence of the use of the word seal in the deed of the reversion caused the conveyance of the reversion to fail, and legal title to the reversion still remained with the original owner.

*The Law of Contracts,* John William Smith (Fourth American—Second London Edition—1856), recognized that matters

relating to the conveyancing of title interests in real property, were not normally covered by the general law of contracts.

> The whole practice of our English Courts of Common Law, *if we except* their criminal jurisdiction and their administration of *the law of real property*, of which it is not my intention to speak, to which may possibly be added those cases which fall within the fiscal jurisdiction peculiar to the Court of Exchequer, *if we except these*, the whole of the remaining subjects with which the jurisdiction of a Court of Common Law is conversant may be distributed into two classes, *Contracts* and *Torts*.

*Id.* at 49 (some emphasis added). *After excluding the law of real property from his discussion,* he went on to discuss, generally, the differences between special and simple contracts, using language, *i.e.,* "deeds," that we have come to associate with conveyances of title to real property. Apparently, in those days, the use of the word "deed" did not have the strong, almost exclusive, association with matters of real property that it has today. Whether the use over the years by the treatise writers, of the term "deed" in a non-real property context, has caused the area of the conveyancing of title interests to be treated similarly to general contracts for limitations purposes, when in historical context conveyancing of real property interests was excluded from the discussion, is difficult, and may now be impossible, to discern.

Smith, as indicated, *supra,* went on to distinguish the different types of contracts (after excluding the law of real property) by referring to contracts under seal as Contracts by Deed and those not under seal as simple contracts. Even then (with the law of real property excluded), the primary focus on the distinction related to the necessity to prove consideration.

> Secondly, it [a contract by deed] must be *sealed and delivered.* This is the main distinction between a *deed* and any other contract. The seal is an indispensable part of every [contract by] deed, and so is the *delivery;* (*m*) with regard to which you must, however, observe, that it is not absolutely necessary that the party executing should take the instrument into his hand and give it to the person for

whose benefit it is intended. . . . However, in practice, it is always safest and most advisable to follow the ordinary and regular course, which is, to cause the person who is to deliver the deed to place his finger on the seal, and acknowledge the seal to be his seal, and state that he delivers the instrument as his act and deed.

. . .

Such, then, being the essentials of a deed—*writing* on paper or parchment, *sealing* and *delivery,*—it is right to add, that, for the sake of convenience, [contracts by ]deeds are divided into two classes, *Deeds Poll* and *Indentures.(y)* The names indeed of Deed Poll and Indenture were . . . derived from the circumstance that the former was shaved or *polled,* as the old expression was, smooth at the edges; whereas the latter was cut or indented with teeth like a saw; for, in the very old times, when deeds were short, it was the custom to write both parts on the same skin of parchment, and to write a word in large letters between the parts; and then, this word being cut through saw fashion, each party took away half of it; and, if it became necessary to establish the identity of the instrument at a future time, they could do so by fitting them together, whereupon the word became legible. . . .

There are one or two peculiarities in the question of a contract made by deed, which, as they apply to all contracts by way of deed, this is the proper place to notice.

In the first place, *a contract by deed requires no consideration to support it;* or perhaps it might be more correct to say [as a general proposition], that the law conclusively presumes that it is made upon a good and sufficient consideration.(c) The importance of this arises from the strong line of *distinction it creates between Contracts by Deed and Simple Contracts.* For a simple contract, that is, a contract by words or by writing not under seal, requires, . . . a consideration to support it, and give it validity. For instance, suppose a written promise in these words—"I, A.B., promise C.D., that I will pay the debt he owes to E.F." This promise would be absolutely void, unless it could be

shown to have been made in consideration of something given or granted to A.B. for making it; for it would be a promise by him to undertake a liability without any consideration or recompense whatever; and, if he neglected to perform it, no action would lie against him.... But, if to that very instrument, conceived in those very words, the additional solemnity of sealing and delivery were added, so as to make it a [contract by] deed, it would become a good and binding covenant on which an action might be supported:(e) and this is on account of the greater formality and solemnity of such an instrument.

*Id.* at 54–67 (some emphasis added) (some alterations in original) (footnotes omitted).

The essence of the use of the word seal in the early law, even when it was affixed to a document identified as a "deed," was that, it, along with delivery of the instrument, conferred a presumption of consideration and validity. Accordingly, even when the contract did not involve the conveyance of property (and Smith had excluded real property matters from his discussion), the term seal previously related to matters of consideration and agreement validity.[10]

Prior to the enactment of the current Real Property Article, conveyancing was governed, generally, by Article 21 of the Maryland Code. Maryland Code (1951), Article 21, sections 13 and 14 provided in relevant part:

13. All deeds conveying real estate ... shall be sufficient, if executed ... as herein required.

---

10. Even in the pre-civil war era, the use of the word seal had, as a primary function, the creation of a presumption of adequate consideration. Prior to the Civil War, slaves were treated as property and the rules relating to the transferring of property apparently applied. In *Stewart v. Redditt*, 3 Md. 67, 80 (1852), a sale of a slave was duly recorded among the property records. Thereafter, the sale's validity was challenged, in part, on the grounds of lack of consideration. The Court held that the conveyance (a bill of sale) had been signed and sealed; then noted that "[i]n most cases, if not in all, the seal of the party affixed to his signature imports of itself a consideration in law."

14. Every deed conveying real estate shall be signed and sealed by the grantor or bargainor....

Even Bills of Sale conveying personal property were, in the past, required to be sealed. Maryland Code (1951), Article 21 section 50 provided:

50. Any bill of sale of personal property shall be sufficient in form if it ... [is] signed and sealed by the vendor, and dated.

The "Forms of Conveyancing." contained in Maryland Code (1951), Article 21, provided:

76. The following forms shall be sufficient to convey real or personal property....

*Form of Lease*

87. This Lease....
   [SEAL.]
   [SEAL.] [11]

Subsequent to 1963 the Maryland Code was amended to eliminate the necessity of the use of the word seal to establish the validity of deeds of conveyance. Maryland Code (1974, 1996 Repl.Vol.), section 4–101 of the Real Property Article, now provides:

(a) *What deeds sufficient; leases.*—(1) Any deed containing the names of the grantor and grantee ... is sufficient, if executed, acknowledged, and ... recorded.

(2) Any lease is sufficient even though it is not acknowledged if it otherwise complies with subsection (a)(1).

(b) *Seal ... not required.*—If a deed is signed by the grantor in accordance with the requirements of Title 5 of this article, the absence of a seal ... does not affect the validity of the deed.

Maryland Code (1974, 1996 Repl.Vol.), section 4–103 of the Real Property Article, provides:

---

11. These brackets were actually contained in the former statute.

(a) *In general.*—If a deed is executed, acknowledged, and, if required, recorded, the validity of the deed . . . is presumed.

(b) *Applicability.*—Subsection (a) applies to a lease even though it is not acknowledged.

Leases are considered to be types of deeds. Maryland Code (1974, 1996 Repl.Vol.), section 1–101 of the Real Property Article, titled "Definitions," provides:

(c) *Deed.*—"Deed" includes any deed, grant, . . . lease, . . . pertaining to land or property or any interest therein or appurtenant thereto, including an interest in rents and profits from rents.

(h) *Lease.*—"Lease" means any oral or written agreement, express or implied, creating a landlord and tenant relationship. . . .

Looking at the relevant case law and the older statutes, it is clear that the use of the word seal affixed to leases related primarily to their sufficiency and validity. There *are* cases in which sealed instruments such as leases have been construed as specialties. We are, however, unaware of any cases specifically raising the question here discussed. The practices of conveyancing, out of which the use of the term seal arose in deeds and leases, raises a question: Whether, without more information in the document itself, or evidence presented, the affixation of the word seal alone, would elevate a deed or lease to a specialty, when in fact, its ancient, and historical use, was primarily to create presumptions of consideration and validity. While, as we have said, there are cases, and old cases as well, where sealed conveyances have been held to be specialties, we are unaware of any cases where the issue has been squarely and completely presented, *i.e.*, does affixation of the word seal to establish the validity of an instrument of conveyance, also create a specialty contract for limitation purposes where no such intention is evident, except for the affixing of the word seal.

There is another area of law, other than in the law of real property, where the courts have recognized that in some

instances when the use of the word seal has some other primary purpose, its affixation to an instrument does not necessarily create a speciality. In *Mayor and Council of Federalsburg v. Allied Contractors, Inc.*, 275 Md. 151, 156, 338 A.2d 275, 279 (1975), we quoted, approvingly from *General Petroleum Corp. v. Seaboard Terminals Corp.*, 23 F.Supp. 137, 140–141 (D.Md.1938), where the federal court was applying the Maryland law on specialties in the context of the affixation of a corporate seal on a construction contract. That court said:

> But with respect to a contract executed by a *corporation,* the mere presence of its seal on the paper without any other reference therein to the seal, does not *necessarily* make the contract a specialty, because it is possible the corporate seal was impressed merely as prima facie evidence of corporate authority for the execution of the paper; **and in that case extrinsic evidence is admissible to show whether the use of the seal was intended to make the paper a specialty or merely as evidence of its authorized execution, or that it was in fact used without authority.** [Bold added.]

The rule as explained in *General Petroleum* is the general rule that applies in instances where a corporate seal is affixed to a document. Because there is a separate and distinct purpose for the affixing of a corporate seal to a document, *i.e.*, it may be evidence of corporate authority for the execution of the document, then there must be other evidence establishing that the corporation intended for the document to be a specialty in order for the twelve-year limitation period to apply. The mere affixing of the corporate seal may not be enough.

Although the word seal is no longer necessary to validate most, if not all, title instruments, historically the use of the word seal in conveyancing documents was necessary to validate the document. As in the use of corporate seals, there was an additional reason, other than to establish a specialty, for the affixing of seals to many real property conveyancing documents, *i.e.*, those documents that actually transfer title interests as opposed to contracts of sale to, in the future,

convey interests in property. The latter generally have been treated as any other contracts. *See Scher v. Altomare,* 278 Md. 440, 442, 365 A.2d 41, 42 (1976).

As far as we can discern, the Court has not heretofore been presented with a case in which arguments were presented that because the use of a seal on conveyancing documents had other purposes, its affixation on such documents, like the use of the corporate seal in corporate instruments, should be treated similarly, instead of an automatic assumption that a specialty was intended. As stated, *supra,* there are cases in which this Court has presumed that the use of the word seal in conveyancing documents created a specialty. *See Earnshaw v. Stewart,* 64 Md. 513, 516–17, 2 A. 734, 736 (1886) where as dicta the Court said, "This much, however, we may say, that although limitations may be a bar to an action at law on a promissory note, referred to in a mortgage, after the lapse of three years, yet if the mortgage contains a covenant to pay the debt, an action will lie on the covenant at any time within twelve years from the default." *See also Jones v. Burgess,* 176 Md. 270, 4 A.2d 473 (1939), where the Court presumed that the proper period of limitations in equity, followed the twelve-year period applicable at law for specialties, when covenants running with the land were concerned, but did not explore the issue further, because the Court found that it made no difference in the particular case whether the three-year or the twelve-year period was applicable.

While the affixation of the word seal to real property conveying documents is no longer required for validation purposes, its use remains widespread, we suspect, because of its use and the requirements of its use, historically. Because we are holding that the provisions of the Courts and Judicial Proceedings Article do not apply to establish a twelve-year limitations period in this case, primarily because of the legislative history of the limitation's statute, *i.e.,* its recodification, it is unnecessary at this time to answer this interesting question

discussed briefly at oral argument and expanded upon in this opinion.[12]

## B.   Legislative History

■■■■   We commence our analysis of the applicability of section 5–101 or section 5–102 by attempting to ascertain the intent of the legislature.   As we said in *State v. Bell*, 351 Md. 709, 720 A.2d 311 (1998):

> We have said that "[t]he cardinal rule of statutory inter-pretation is to ascertain and effectuate the intention of the legislature." *Oaks v. Connors*, 339 Md. 24, 35, 660 A.2d 423, 429 (1995).   Legislative intent must be sought first in the actual language of the statute.   *Marriott Employees Fed. Credit Union v. Motor Vehicle Admin.*, 346 Md. 437, 444–45, 697 A.2d 455, 458 (1997); *Stanford v. Maryland Police Training & Correctional Comm'n*, 346 Md. 374, 380, 697 A.2d 424, 427 (1997) (quoting *Tidewater v. Mayor of Havre de Grace*, 337 Md. 338, 344, 653 A.2d 468, 472 (1995)); *Coburn v. Coburn*, 342 Md. 244, 256, 674 A.2d 951, 957 (1996); *Romm v. Flax*, 340 Md. 690, 693, 668 A.2d 1, 2 (1995); *Oaks*, 339 Md. at 35, 660 A.2d at 429; *Mauzy v. Hornbeck*, 285 Md. 84, 92, 400 A.2d 1091, 1096 (1979); *Board of Supervisors v. Weiss*, 217 Md. 133, 136, 141 A.2d 734, 736 (1958).   Where the statutory language is plain and free from ambiguity, and expresses a definite and simple meaning, courts normally do not look beyond the words of the statute to determine legislative intent.   *Marriott Employees*, 346 Md. at 445, 697 A.2d at 458; *Kaczorowski v. Mayor of Baltimore*, 309 Md. 505, 515, 525 A.2d 628, 633

---

**12.**  We have found no specific reference to the historical uses of the word seal in respect to real property instruments in the legislative history we discuss *infra*.   It would be speculation, therefore, to attribute to the Legislature, or not attribute to the Legislature for that matter, a recognition of the historical use of seals in a real property context as a reason for not specifically declaring such sealed lease instruments to be specialties in the 1973 recodification.   The distinction in respect to leases under the law prior to the 1973 recodification, may well have resulted from the unique status of lease agreements as conveyances of interests in real property.

(1987); *Hunt v. Montgomery County,* 248 Md. 403, 414, 237 A.2d 35, 41 (1968).

. . .

This Court recently stated that "statutory language is not read in isolation, but 'in light of the full context in which [it] appear[s], and in light of external manifestations of intent or general purpose available through other evidence.' " *Stanford v. Maryland Police Training & Correctional Comm'n,* 346 Md. 374, 380, 697 A.2d 424, 427 (1997) (alterations in original) (quoting *Cunningham v. State,* 318 Md. 182, 185, 567 A.2d 126, 127 (1989)). To this end,

[w]hen we pursue the context of statutory language, we are not limited to the words of the statute as they are printed. . . . We may and often must consider other "external manifestations" or "persuasive evidence," including a bill's title and function paragraphs, amendments that occurred as it passed through the legislature, its relationship to earlier and subsequent legislation, and other material that fairly bears on the fundamental issue of legislative purpose or goal, which becomes the context within which we read the particular language before us in a given case.

. . . [I]n *State v. One 1983 Chevrolet Van,* 309 Md. 327, 524 A.2d 51 (1987), . . . [a]lthough we did not describe any of the statutes involved in that case as ambiguous or uncertain, we did search for legislative purpose or meaning—what Judge Orth, writing for the Court, described as "the legislative scheme." [*Id.* at] 344–45, 524 A.2d at 59. We identified that scheme or purpose after an extensive review of the context of Ch. 549, Acts of 1984, which had effected major changes in Art. 27, § 297. That context included, among other things, a bill request form, prior legislation, a legislative committee report, a bill title, related statutes and amendments to the bill. *See also Ogrinz v. James,* 309 Md. 381, 524 A.2d 77 (1987), in which we considered legislative history (a committee report) to assist in construing legislation that we did not identify as ambiguous or of uncertain meaning.

*Kaczorowski,* 309 Md. at 514–15, 525 A.2d at 632–33 (some citations omitted).

*Id.* at 717–19, 720 A.2d at 315–16 (some alterations in original); *see Williams v. Mayor & City Council of Baltimore,* 359 Md. 101, 115–17, 753 A.2d 41, 48–49 (2000); *Riemer v. Columbia Medical Plan, Inc.,* 358 Md. 222, 235–36, 747 A.2d 677, 684–85 (2000); *Laznovsky v. Laznovsky,* 357 Md. 586, 606–07, 745 A.2d 1054, 1065 (2000).

In his brief to this Court, petitioner argues that the legislative intent of section 5–101 is for leases, sealed or unsealed, to have a three-year limitation period for filing an action. Petitioner looks to the predecessor of section 5–101 [13] to demonstrate that the General Assembly intended for the three-year limitations period of section 5–101 to cover all leases.

Maryland Code (1957, 1972 Repl.Vol.), Article 57 section 1 evolved from 1715 [14] Maryland Laws, Chapter 23, section 2, which stated that "all Actions of Debt for Arrearages of Rent" were subject to a three-year limitation period. The language in Article 57 section 1 that applied to leases was originally enacted by 1884 Maryland Laws, Chapter 502,[15] which stated:

All actions, whether of debt, ejectment or of any other description whatsoever, hereafter brought to recover rent in arrear reserved under any form of lease, whether for ninety-nine years, renewable forever, or for a greater or lesser period, and all distraints hereafter issued to recover such rent shall be commenced, sued or issued within three years from the time the rent in arrears shall or may have accrued.

---

**13.** Section 5–101 was preceded by Maryland Code (1957, 1972 Repl. Vol.), Article 57 section 1.

**14.** The use of the year of enactment as a citation for statutes passed during the colonial period prior to Maryland becoming a state has become the standard method of referring to colonial era statutes.

**15.** This chapter added the language to Article 53 section 23 of the Code of Public General Laws, entitled "Landlord and Tenant." This language was codified in Article 57 section 1 with the adoption of the Code in 1888.

By 1888, Article 57 section 1, as it pertains to actions for rent arrears under any form of lease, was in the substantive form in which it would remain at the time of the recodification in 1973. Before the recodification, Maryland Code (1957, 1972 Repl.Vol.), Article 57 section 1 stated: [16]

All actions of account, actions of assumpsit, or on the case, except as hereinafter provided, actions of debt on simple contract, detinue or replevin, all actions for trespass for injuries to real or personal property, all actions for illegal arrest, false imprisonment, or violation of the twenty-third, twenty-sixth, thirty-first and thirty-second articles of the Declaration of Rights, or any of them, or of the existing, or any future provisions of the Code touching the writ of habeas corpus or proceedings thereunder, and *all* actions, whether of debt, ejectment or of any other description whatsoever, *brought to recover rent in arrear, reserved under any form of lease,* whether for ninety-nine years renewable forever, or for a greater or lesser period, and all distraints issued to recover such rent shall be commenced, sued or issued within three years from the time the cause of action accrued; and all actions on the case for libel and slander and all actions of assault, battery and wounding, or any of them, within one year from the time the cause of action accrued. [Emphasis added.]

Up until 1973, when Article 57 section 1 was recodified into the Courts and Judicial Proceedings Article, Article 57 section 1 provided for a three-year limitation period on all actions brought to recover rent arrears under any form of lease. This would include a lease to which the word seal was affixed.

Prior to the recodification, when Article 57 section 3 was codified into section 5–102, Article 57 section 3 provided for a twelve-year limitation period for specialties. Article 57 section 3 stated:

---

**16.** We note that the title of that section was "Actions other than those upon specialities." This title was not enacted by the General Assembly but apparently was added to the section by codifiers. Accordingly, it was (and is) not a part of the statute.

No bill, testamentary, administration or other bond (except sheriffs' and constables' bonds), judgment, recognizance, statute merchant, or of the staple or other specialty whatsoever, except such as shall be taken for the use of the State, shall be good and pleadable, or admitted in evidence against any person in this State after the principal debtor and creditor have been both dead twelve years, or the debt or thing in action is above twelve years' standing; provided, however, that every payment of interest and every payment on the principal upon any single bill or other specialty shall suspend the operation of this section as to such bill or speciality for three years after the date of such payment; saving to all persons who shall be under the aforementioned impediments of infancy or insanity of mind the full benefit of all such bills, bonds, judgments, recognizance, statute merchant, or of the staple or other specialties, for the period of six years after the removal of such disability.

It is important to note that the statutes prior to 1973, in respect to "specialities," provided for a twelve-year limitation period as does the present statute. Nonetheless, prior to 1973, the Legislature treated the recovery of accrued rent under *all* lease agreements as being within the confines of Article 57 section 1. In *Henry's Drive–In, Inc. v. Pappas*, 264 Md. 422, 430, 287 A.2d 35, 39 (1972), we stated that "[t]here is, however, authority for the proposition that since recovery of arrearages of rent is specifically mentioned in [Article 57] § 1 and not in [Article 57] § 3, a lease cannot be regarded as a specialty to which § 3 applies."

In 1970, Governor Mandel established the Governor's Commission to Revise the Annotated Code. In a Commission report to the General Assembly, the Commission discussed why the Code revision was necessary and what the responsibilities of the Commission were. The report stated:

At the Commission's first meeting in September of that year [1970], the Governor pointed out that the last comprehensive revision of the Maryland Code was completed in 1888, and that during the intervening years a great many statutes had been added, frequently with little or no refer-

ences to existing articles of the Code or to logical relationships to existing statutes. As a result, he said, the Annotated Code has lost whatever rational cohesiveness it once had, and has become increasingly difficult to use. The Governor indicated that there now exist in the Code various inconsistencies in the statutory treatment of similar subjects, defects in organization and arrangement of statutes, and numerous instances of ambiguity or lack of clarity in the expression of legislative intent.

Governor Mandel charged the Commission with the responsibility of a formal revision of the public general laws, including an improved scheme of organization, elimination of obsolete or unconstitutional provisions, resolution of inconsistencies and conflicts in the laws, and the general improvement of language and expression.

. . .

The basic thrust of the Commission's work has to do *with formal and not substantive changes.* Nevertheless, at some points in its work, the Commission has found it necessary to make recommendations which do involve the substance of the laws. In a sense, the elimination of an obsolete provision is a substantive change. Also, where the Commission has discovered inconsistencies or gaps in the laws, it has sometimes made substantive recommendations in an effort to rectify the situation. This follows the Governor's directive to eliminate inconsistencies and conflicts.

*In every such case, the revisor's notes following the particular section explain the change and the reasons for it. Changes of this kind are also noted in this report.*

Sometimes the Commission identified problems involving such fundamental policy decisions that it felt they should be called specially to the attention of the General Assembly for determination. These matters are also mentioned in the revisor's notes and in this report. [Emphasis added.]

The first three articles of the Annotated Code that were drafted by the Commission were the Agriculture, Courts and Judicial Proceedings, and Natural Resources Articles. In its

report to the General Assembly on the Courts and Judicial Proceedings Article, the Commission reviewed each section and discussed any changes that were made as the old statutes were moved into statutes that were drafted by the Commission. Article 57 section 1 was revised and moved into section 5–101 of the Courts and Judicial Proceedings Article. In its report to the General Assembly, the Commission discussed the changes to Article 57 section 1 as it was submitted to the General Assembly as section 5–101. The Commission report, examining Subtitle 1 of the proposed Courts and Judicial Proceedings Article,[17] stated:

> Subtitle 1 details the periods of time in which an action may be brought. Section 5–101, as revised, is a blanket three year limitation covering all civil causes of action for which no other limitation is specifically provided. This was done on the recommendation of the Commission's Subcommittee on Courts, which felt that such a revision would avoid confusion and was therefore a justifiable substantive change. Many of the types of action listed in the present statute are either obsolete or obscure. The action of account refers to an ancient legal action, never widely used in this country, to which ancient forms of pleadings and procedure (including wager of law) applied. It was felt that many lawyers may not be aware of the distinctions inherent in the ancient forms of action such as between trespass, case, and assumpsit. There is some doubt as to which of the eight writs of habeas corpus this section applied. It is possible that in enacting some modern statutory causes of action which do not fit within the old forms of action, the legislature may have neglected to provide specific statutes of limitation. In light of the above, it was felt that a general three year provision, with exceptions for actions not falling within the three year period, would be an improvement. *There is no intention to affect the notice requirements or*

---

17. Subtitle 1 was titled "Limitations" and was part of Title 5 of the Courts and Judicial Proceedings Article, which was titled "Prohibited Actions and Limitations."

*other provisions dealing with the time within which a suit must be brought such as the three year limitation in wrongful death cases.*

. . .

Section 5–102 retains the forms of action (specialties) in order to avoid making substantive changes. The legislature may wish to consider whether there is any valid reason for having a longer limitations period simply because an instrument is executed under seal. [Emphasis added.]

Section 5–101 of the Courts and Judicial Proceedings was enacted by 1973 Maryland Laws First Special Session, chapter 2. The new section 5–101, as passed in chapter 2, stated: [18]

Sec. 5–101. Limitations in General: Three Years.

A civil action at law shall be filed within three years from the date it accrues unless another provision of the code provides a different period of time within which an action shall be commenced.

Section 5–101 was accompanied by a revisor's note, which stated:

This section is new language derived from Art. 57, § 1. Rather than listing the various forms of action, it is decided that a blanket three year provision, with exceptions for other limitations, be substituted.

. . .

Apparently the legislature intended to cover all causes of action existing in 1729 when this section was enacted, subject to certain exceptions. *It is believed that this section effectuates this intention in an updated fashion.* [Emphasis added.]

Section 5–101 was enacted as a broad three-year limitation provision for the purpose of avoiding confusion and providing clarity. The Commission and the General Assembly codified section 5–101 with the clear intent to cover the causes of

---

**18.** Section 5–101, in its present form, has not changed from its original enactment by chapter 2.

action that it had been the intent of the legislature to cover with Article 57 section 1, just in a more simplistic form.

## C. Analysis

We have held that a change in a statute as part of a recodification will not modify the law unless the intent of the legislature to change the law is clear. In *Blevins v. Baltimore County*, 352 Md. 620, 724 A.2d 22 (1999), the main issue was whether the General Assembly intended to make a substantive change in the law when the General Assembly was rewriting Maryland Code, Article 101, section 33(d) as section 9–610(a) of the Labor and Employment Article. In examining the enactment of the Labor and Employment Article by the General Assembly as part of the code revision process, we stated:

> We have long recognized and applied the principle that "a change in a statute as part of a general recodification will ordinarily not be deemed to modify the law *unless the change is such that the intention of the Legislature to modify the law is unmistakable.*" *Duffy v. Conaway*, 295 Md. 242, 257, 455 A.2d 955 (1983) (emphasis added); *In re Special Investigation No. 236*, 295 Md. 573, 458 A.2d 75 (1983). That is because the principal function of code revision "is to reorganize the statutes and state them in simpler form," and thus "changes are presumed to be for the purpose of clarity rather than for a change in meaning." *Bureau of Mines v. George's Creek*, 272 Md. 143, 155, 321 A.2d 748, 754 (1974), quoting from *Welsh v. Kuntz*, 196 Md. 86, 97, 75 A.2d 343, 347 (1950).

*Id.* at 642, 724 A.2d at 32–33.

We held prior to the codification of the Courts and Judicial Proceedings Article that actions for rent arrears were subject to Article 57 section 1, the three-year limitation period. *Maskell v. Hill*, 189 Md. 327, 337, 55 A.2d 842, 846–47 (1947). As stated, *supra*, we also have held that "[t]here is ... authority for the proposition that since recovery of arrearages of rent is specifically mentioned in [Article 57] § 1 and not in [Article 57] § 3, a lease cannot be regarded as a specialty to which § 3

applies." *Henry's Drive–In, Inc.*, 264 Md. at 430, 287 A.2d at 39. The question is whether the intent of the General Assembly when recodifying Article 57 section 1 to section 5–101 was to change the statute so that the three-year limitations period would no longer cover leases with seals affixed.

Since the enactment of 1715 Maryland Laws, Chapter 23 section 2, all claims for rent arrears have been subject to a three-year statute of limitations. This coverage was eventually expanded to cover rent arrears "under any form of lease, whether for ninety-nine years renewable forever, or for a greater or lesser period." There were no changes in the statute's language in respect to limitations for leases until the codification of the Courts and Judicial Proceedings Article by the Governor's Commission to Revise the Annotated Code. Article 57 section 1, the three-year limitations period, was then codified at section 5–101 and was changed to a blanket three-year limitation.

The intent of the Commission and the General Assembly in the revision of the Annotated Code was not to make substantive changes, but to make formal changes that would result in improved organization of the Code, eliminate obsolete or unconstitutional provisions, and resolve inconsistencies and conflicts in the laws. In its report to the General Assembly, the Commission, discussing section 5–101, stated that "it was felt that a general three year provision, with exceptions for actions not falling within the three year period, would be an improvement. *There is no intention to affect the notice requirements or other provisions dealing with the time within which a suit must be brought* such as the three year limitation in wrongful death cases." (Emphasis added.) Similarly, the revisor's note to section 5–101 stated that, "[a]pparently the legislature intended to cover all causes of action existing in 1729 when this section was enacted, subject to certain exceptions. It is believed that this section effectuates this intention in an updated fashion." The Commission's report and the revisor's note show an intent not to change the affect of Article 57 section 1 as the statute pertained to leases. We have not been directed to, nor have we found any clear, "unmistakable"

legislative history indicating that the Legislature intended to change the limitations period for actions on leases. The intent behind the recodification was to clarify the statute to avoid confusion. The Commission's report and the revisor's note failed to establish that the Commission or the General Assembly thought that leases, to which seals were affixed, were a matter that needed to be addressed or covered by section 5–102. It was not the intent of the General Assembly to remove actions on leases, with or without a seal affixed, from the type of claims governed by the three-year period of the blanket limitation codified as section 5–101.

The Commission's report also discussed section 5–102, the statute covering specialties, stating that "[s]ection 5–102 retains the forms of action (specialties) in order to avoid making substantive changes. The legislature may wish to consider whether there is any valid reason for having a longer limitations period simply because an instrument is executed under seal." This language would indicate that, not only did the Commission fail to recommend any new additions to the specialty statute, such as leases with seals affixed, but that the Commission's only substantive recommendation was that the General Assembly consider omitting altogether the twelve-year limitations period for specialties.

In examining the legislative intent behind the codification of section 5–101, we also find that what is not discussed by the Commission's report and the revisor's note is significant. The Commission report stated:

The basic thrust of the Commission's work has to do with formal and not substantive changes. Nevertheless, at some points in its work, the Commission has found it necessary to make recommendations which do involve the substance of the laws ...

In every such case, the revisor's notes following the particular section explain the change and the reasons for it. Changes of this kind are also noted in this report.

The Commission's report clearly establishes that any substantive changes would be explained in the report or in the

revisor's notes. In the report, the discussion of the changes in the codification of section 5–101 did not include any information about changing the affect of the three-year limitations period on actions on leases. Similarly, the revisor's note after the codification of section 5–101 did not include any information about leases, including leases to which seals were affixed, not being controlled by section 5–101's blanket three-year limitation period. In fact, the Commission's report, in essence, stated that the Commission had no intention of affecting the provisions dealing with the times in which suits must be filed. As we stated, *supra*, this Court has held that a change in a statute as part of a general recodification will not modify the law unless the change is such that the intention of the legislature to change the law is clear. The clear intent of the legislature to substantively modify the law is missing from the legislative history of the relevant statutes at issue in the case *sub judice*.

### III. Conclusion

Since 1715, Maryland has had a statute that requires all claims for arrearages of rent to be filed within three years and since 1888 the State of Maryland has had a statute that requires all claims for arrearages of rent, "under any form of lease," to be filed within three years. The language of that statute, Article 57 section 1, was changed during a general recodification of the Annotated Code. The General Assembly, however, did not express any intent to change the substantive application of the old statute in new section 5–101, as it pertains to claims for arrearages of rent under any form of lease.

We hold that claims for arrearages of rent under a residential lease, even a lease to which a seal is affixed, must be filed within the three-year limitation period unless the parties to the lease agree, in the body of the lease, that the lease is subject to the twelve-year limitation period of section 5–102. The Commission and the General Assembly had the opportunity to express an intent to change the substantive affect of section 5–101 as it applies to leases; they did not express such

an intent. Without evidence of such an intent, we will not take it upon ourselves to perceive it and to hold that the statute of limitations was changed in respect to leases during a general recodification. If it was the General Assembly's intent to change the statute of limitations for actions on leases to which seals were affixed, then the General Assembly retains the power to clarify that intent.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE DISTRICT COURT OF MARYLAND; COSTS TO BE PAID BY RESPONDENT.**