*Gregory Smith v. Wakefield, LP*
No. 28, September Term 2018


**Landlord-Tenant Law – Residential Leases – Statute of Limitations.** The statute of limitations applicable to actions for back rent under residential leases is three years pursuant to Maryland Code, Courts & Judicial Proceedings Article, §5-101, regardless of whether the lease includes a seal or language that purports to convert it into a contract under seal subject to a 12-year period of limitations under Maryland Code, Courts & Judicial Proceedings Article, §5-102.


**Limitations – Modifying Statutes of Limitation by Agreement.** The three-year period of limitations applicable to actions for back rent under residential leases is not subject to modification by agreement, in light of Maryland Code, Real Property Article, §8-208(d).

Circuit Court for Baltimore City
Case No. 24-C-18-000566
Argument: November 5, 2018

IN THE COURT OF APPEALS
OF MARYLAND

No. 28

September Term, 2018

_____

GREGORY SMITH

V.

WAKEFIELD, LP

_____

Barbera, C.J.,
Greene
McDonald
Watts
Hotten
Getty
Adkins, Sally D.
    (Senior Judge,
        Specially Assigned),

JJ.

_____

Opinion by McDonald, J.
Getty and Adkins, JJ., dissent.

_____

Filed: February 27, 2019

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

For three centuries, Maryland law has provided that an action seeking payment of back rent for a residential lease is to be brought before the expiration of a three-year period of limitations. That period of limitations is currently reflected in Maryland Code, Courts & Judicial Proceedings Article ("CJ"), §5-101. In recent decades, the question has arisen whether the period of limitations for such an action may be extended to 12 years by converting a residential lease into a "contract under seal" so that it might be regarded as a "specialty" – a type of action for which another statute, CJ §5-102, provides the longer period of limitations. In *Tipton v. Partner's Management Co.*, 364 Md. 419 (2001), this Court said "no," but that answer was a partial one, as it was based on the characteristics of the particular lease in that case. This is the sequel.

In 2007, Petitioner Gregory Smith entered into a month-to-month lease for an apartment in Baltimore City. It is undisputed that he remained in the apartment only a few months before vacating it and ceasing to pay rent. The circumstances under which he left are in dispute. According to the landlord, Respondent Wakefield, LP ("Wakefield"), Mr. Smith was evicted for failure to pay rent in 2008; according to Mr. Smith, he gave appropriate notice for terminating the lease and left voluntarily.

Seven years later, in 2015, Wakefield brought suit against Mr. Smith seeking to recover unpaid rent that it claimed Mr. Smith owed from 2008. When the case finally came to trial in 2018, Mr. Smith asserted that Wakefield had not filed suit within the three-year period of limitations in CJ §5-101 that applies to actions seeking back rent. Wakefield argued that the lease qualified as a "contract under seal" and that the 12-year statute of limitations set forth in CJ §5-102 applied. If Wakefield is correct, its suit was timely; if Mr. Smith is correct, it was not.

The District Court sitting in Baltimore City agreed with Wakefield's argument and entered a judgment in its favor. On appeal, the Circuit Court for Baltimore City reached the same conclusion.

We reverse. We hold that actions for back rent under residential leases are subject to a three-year period of limitations – as they have been for the past three centuries in Maryland – regardless of whether the lease includes provisions that purport to convert it into a contract under seal. To the extent that such provisions might be considered an agreement to modify the otherwise applicable period of limitations, such an agreement would be contrary to the State's landlord-tenant law and unreasonable under the particular circumstances of this case.

# I

## Background

### A.    *Statutes of Limitation for Civil Actions*

1.  CJ §5-101 and CJ §5-102

Two statutes that set forth limitations periods are relevant to this case. First, the general statute of limitations for civil actions prescribes a three-year limitations period. It states:

> A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced.

CJ §5-101. Another statute provides a longer 12-year period of limitations for bringing certain types of actions classified as "specialties." It states, in pertinent part:

2

(a)     An action on one of the following specialties shall be filed within 12 years after the cause of action accrues, or within 12 years from the date of the death of the last to die of the principal debtor or creditor, whichever is sooner:

…

(5)  Contract under seal …

CJ §5-102(a)(5).[1]

2.  The *Tipton* Case

This Court considered the possible application of these two statutes of limitations to an action seeking to recover back rent nearly two decades ago in *Tipton v. Partner's Management Co.*, 364 Md. 419 (2001).  That case concerned a residential lease.  The landlord and tenant entered into a one-year lease beginning in January 1992.  Just above the signature lines on the pre-printed lease form appeared the legend:  "IN WITNESS WHEREOF the parties hereto have set their hands and *seals* the day and year first above written."  364 Md. at 423 (emphasis added).  In addition, the word "SEAL" appeared in parentheses at the end of the signature line.  *Id*.

The tenant was evicted from the property in November 1992 for failure to pay rent.  The landlord sent the tenant a letter requesting payment, but did not take any legal action to collect the back rent for approximately seven years.  In 1999, an agent of the landlord filed a complaint in the District Court.  The tenant raised a defense that the suit had been

---

[1] Other "specialties" listed in the statute include such things as a promissory note or other instrument under seal, a bond, and a judgment.  Certain promissory notes and instruments under seal were excluded from that statute in 2014.  Chapter 592, Laws of Maryland 2014.

filed well after the three-year period of limitations provided in CJ §5-101. The landlord responded that the lease was a "contract under seal" and that, accordingly, the 12-year period of limitations provided in CJ §5-102(a)(5) applied. The District Court, in a decision affirmed by the Circuit Court on appeal, agreed with the landlord and denied the tenant's motion to dismiss the complaint.

This Court granted a writ of *certiorari* to consider whether the lease in question was a contract under seal – *i.e.*, a specialty – and, if so, whether application of the period of limitations under CJ §5-102(a)(5) would be "repugnant" to certain provisions of the State landlord-tenant law providing protections to tenants in residential leases. 364 Md. at 422. The Court ultimately concluded that the lease in question was not a "contract under seal" and, therefore, the 12-year period of limitations for specialty actions did not supersede the three-year period of limitations set forth in CJ §5-101 in that case. The Court was careful to say that it was not resolving whether application of the 12-year period of limitations would conflict with provisions of the State landlord-tenant law. *Id.*

In reaching its disposition of the case, the Court observed that documents and instruments concerning the conveyancing of real property, such as leases, had long been executed "under seal" without any intention of creating a specialty action. 364 Md. at 425-34. The Court also recounted, in elaborate detail, the legislative history of CJ §5-101 and observed that historically Maryland law had applied a three-year period of limitations to actions for back rent since colonial times. It noted that the enactment of CJ §5-101 was a product of code revision and that there was no evidence that the General Assembly intended to change the longstanding period of limitations applicable to actions for back

4

rent.  *Id*. at 434-45.  The Court stated that "[w]ithout evidence of [legislative] intent, we will not … hold that the statute of limitations was changed in respect to leases during a general recodification."  *Id*. at 446.

The Court reiterated the results of its analysis in three separate sentences beginning "We hold ...."  A difference in the language of one of those sentences may have significance for this case.  First, at the outset of the opinion, the Court previewed what was to come:

> We hold that a residential lease agreement, even if the lease agreement has the word seal affixed, is subject to the three-year limitation period enunciated in [CJ §5-101].

364 Md. at 422.  In a footnote appended to that sentence, the Court observed that parties could agree to waive an otherwise applicable statute of limitations, but that a seal alone would not effect such a waiver.  *Id*. at 422 n.3.

Second, at the beginning of the "Discussion" section of the opinion, the Court again summarized its holding in similar language:

> We hold that actions for rent arrears under any kind of residential lease must be filed in compliance with [CJ §5-101].

364 Md. at 425.  A footnote appended to that sentence cross-referenced the footnote concerning waiver that appeared with the prior statement of the holding.  *Id*. at 425 n.9.[2]

---

[2] We note a discrepancy among the various published versions of the *Tipton* opinion with respect to the cross-reference in its footnote 9.  In the hard copy of volume 364 of the Maryland Reports, footnote 9 of the *Tipton* opinion cross-references *footnote 3*, which concerns waiver.  In the electronic version of the opinion originally posted on the Court's website in 2001, as well as the electronic versions of the opinion available on Westlaw and Lexis and the hard copy of the Atlantic Reporter (773 A.2d at 492), the cross-reference in footnote 9 is to *footnote 2* of the opinion.  Footnote 2 of the *Tipton* opinion simply states that references to "section 5-101" are to CJ §5-101 – which would be an unnecessary and perhaps even puzzling cross-reference in this context.  It appears that a typographical error

Thus, the first two iterations of the holding in *Tipton* simply state that actions for back rent are subject to the three-year period of limitations in CJ §5-101, that limitations periods may be waived, and that a seal does not suffice to effect such a waiver.

Finally, in the concluding paragraph of the *Tipton* opinion, the Court reprised its holding in a passage that sets the stage for this case. The Court stated:

> We hold that claims for arrearages of rent under a residential lease, even a lease to which a seal is affixed, must be filed within the three-year limitation period unless the parties to the lease agree, in the body of the lease, that the lease is subject to the twelve-year limitation period of section 5-102.

364 Md. at 445. As is evident, the first clause of that sentence restated the Court's conclusion concerning the lease that was before it. Unlike the previous two instances, however, the Court did not qualify its holding with a reference to the possibility of waiver of limitations. Instead, the second clause of the sentence following the word "unless" addressed a somewhat distinct question: whether a lease could be converted into a contract under seal and thus be made subject to the 12-year period of limitations in CJ §5-102. This seemed to predict the Court's opinion about a hypothetical lease that might appear in a future case – the kind of prediction that is often referred to as dicta, as it was unnecessary to the decision in *Tipton*.

The dicta in *Tipton* generates several questions. It is not clear how that dicta related to the Court's reasoning in the case before it. The dicta seems at odds with the Court's

---

in the original posted decision was corrected for publication in the Maryland Reports, but has persisted in other published versions of the opinion.

indication that it would require evidence of legislative intent to extend the statute of limitations applicable to actions for back rent. It may be that the Court intended the dicta to illustrate a situation in which the parties waived the otherwise applicable period of limitations of CJ §5-101, although it is not clear why such a waiver would need to involve CJ §5-102. In addition, there also remained the question that the Court in *Tipton* said that it was *not* answering – whether such an extension of the period of limitations would be "repugnant" to the State landlord-tenant law.

This case presents the hypothetical future lease imagined in the *Tipton* dicta. We are now called upon to answer those questions.

**B.      *Wakefield's Action Against Mr. Smith for Back Rent***

*The Lease*

On March 6, 2007, Mr. Smith entered into a lease agreement with Wakefield[3] to rent an apartment in Baltimore City.[4] A one-page cover sheet identified the address of the property and the tenant, specified the term (month-to-month) and the monthly rent, and set forth the basic lease agreement, incorporating an attached preprinted form entitled "Lease Covenants." The cover page included signature lines for the tenant and landlord's agent

---

[3] The lease formally specified Maryland Management Company, an agent of Wakefield, as landlord. This action was originally filed in the District Court in the name of Maryland Management Company. Pursuant to Maryland Rule 3-201, Wakefield was later substituted as the real party in interest. For simplicity, we will refer to Wakefield throughout this opinion when referring to the plaintiff in the trial courts and the Respondent in this Court.

[4] According to testimony in the Circuit Court, Mr. Smith had lived in the same apartment under prior leases since March 2004.

followed by "(Seal)." The attached Lease Covenants form consisted of seven pages of 90 numbered sections of varying lengths that stated various conditions of the lease and obligations of the tenant. Among those provisions was a paragraph, which stated (in a font considerably smaller than what appears below):

> **<u>STATUTE OF LIMITATIONS</u>**: This lease is under seal and is subject to the twelve-year limitation period of Section 5-102 of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland.

This provision of the lease appeared to echo the dicta in the *Tipton* decision quoted earlier.[5]

*Complaint, Motion to Dismiss, and Trial in District Court*

On September 22, 2015, Wakefield filed a complaint in the District Court sitting in Baltimore City. In an attachment to the complaint, Wakefield alleged that Mr. Smith had failed to pay rent on December 1, 2007, and had been evicted as of the end of January 2008 – more than seven and a half years before the filing of the complaint. Wakefield sought to recover $4,035.42 (for unpaid rent and related costs) from Mr. Smith plus interest, attorney's fees, and court costs.

Nearly two more years passed before Wakefield served Mr. Smith with the complaint on August 14, 2017. Mr. Smith filed a notice of intent to defend (later amended), in which he stated, among other things, that he had given the landlord 90 days advance notice of his intent to vacate the property and that he owed no rent as of that time. In a

---

[5] We are advised by Wakefield that Maryland Management Company, the agent that entered into the lease on Wakefield's behalf, was a successor of Partner's Management Company, one of the litigants in the *Tipton* case. *See* footnote 3 above.

written submission to the District Court, Mr. Smith also argued that Wakefield had failed to file its action within the three-year period of limitations applicable to an action for back rent. In response, Wakefield asserted that the lease was a contract under seal and that the applicable period of limitations was therefore 12 years pursuant to CJ §5-102. At the trial on December 18, 2017, the District Court rejected Mr. Smith's limitations defense and entered judgment for Wakefield in the amount it had requested.

De Novo *Appeal in Circuit Court*

Mr. Smith pursued a *de novo* appeal in the Circuit Court for Baltimore City. In that court, he moved to dismiss the complaint on the basis of the statute of limitations. On April 20, 2018, the Circuit Court heard argument on the motion and denied it. After conducting a *de novo* trial that same day, the Circuit Court entered judgment in favor of Wakefield.[6]

Mr. Smith then filed a petition for a writ of *certiorari,* which we granted on July 12, 2018.

# II

## Discussion

### A. *Standard of Review*

In this appeal, Mr. Smith challenges only the Circuit Court's denial of his motion to dismiss the complaint on limitations grounds. The relevant facts are undisputed and the Circuit Court based that ruling on its understanding of the limitations period applicable to

---

[6] Mr. Smith appeared through counsel in the Circuit Court and did not present any evidence on the merits of the action.

an action for back rent under Mr. Smith's lease with Wakefield. Thus, the issue before us is a question of law. We review a circuit court's ruling on a question of law applied to undisputed facts without deference under what is sometimes called a "*de novo* standard of review." *See, e.g., Walter v. Gunter*, 367 Md. 386, 392 (2002).

## B.    *The Period of Limitations Applicable to Actions for Back Rent*

Before us and before the Circuit Court, Wakefield has relied on the dicta in *Tipton* that an action for back rent must be filed within three years "unless the parties to the lease agree, in the body of the lease, that the lease is subject to the twelve-year limitation period of section 5-102." 364 Md. at 445. Wakefield argues that this statement provided a "road map" for extending the period of limitations for a back rent action to 12 years. In denying Mr. Smith's motion to dismiss on the basis of the three-year period of limitations, the Circuit Court accepted that argument. We begin by analyzing whether such a "road map" would be consistent with the reasoning and actual holding in *Tipton*.

### 1.    The Landscape Before 1970

The legislative policy judgment inherent in the designation of an appropriate period of limitations for a particular cause of action has long been recognized by this Court. *See, e.g., Georgia-Pacific Corp. v. Benjamin*, 394 Md. 59, 84-85 (2006); *Pennwalt Corp. v. Nasios*, 314 Md. 433, 437-38 (1988); *Pierce v. Johns-Manville Sales Corp.*, 296 Md. 656, 665 (1983). In particular, "[a] statutory period of limitations represents a policy judgment by the Legislature that serves the interest of a plaintiff in having adequate time to investigate a cause of action and file suit, the interest of a defendant in having certainty that there will not be a need to respond to a potential claim that has been unreasonably

10

delayed, and the general interest of society in judicial economy." *Ceccone v. Carroll Home Services, LLC*, 454 Md. 680, 691 (2017).

In 1715, the Maryland colonial government passed a law stating that "all Actions of Debt for Arrearages of Rent" were subject to a three-year limitations period. Chapter 23, §2, Laws of Maryland 1715. The specification that an action for back rent be subject to a three-year period of limitations remained an explicit part of Maryland statutory law through numerous recodifications during the following centuries. The Court's opinion in *Tipton* documented those recodifications in detail and there is no need to repeat that history here. *See* 364 Md. at 436-41. It suffices to say that, at the dawn of the most recent code revision project in the early 1970s, former Article 57, §1 of the Maryland Code (1968 Repl. Vol.) provided that "All actions … brought to recover rent in arrear, reserved under any form of lease … and all distraints issued to recover such rent shall be commenced, sued, or issued within three years of the time the cause of action accrued…."[7]

During that same time period, it was customary, if not required, that leases of real property were executed "under seal." *See, e.g.,* Maryland Code, former Article 21 (1966 Repl. Vol.), §6 (providing that "[e]very deed conveying real estate" – which, by definition, included many leases – "shall be signed and sealed…"), §79 (statutory lease form with the

---

[7] Consistent with the legislative judgment that a landlord should have a three-year period in which to recover back rent is another provision that appeared in the same enactments and that allowed landlords to condition a tenant's exercise of a renewal option on the payment of up to three years unpaid back rent. *See* Chapter 502, Laws of Maryland 1884. That provision, which is not technically a period of limitations for bringing suit, was later recodified separately from the limitations provision as Maryland Code, Real Property Article, §8-111.

word "SEAL" alongside spaces for signatures). One can spend a pleasant afternoon in an obscure corner of a law library with some dusty treatises that recount the history of the use of seals in conveyances, leases, and contracts. *See, e.g.,* 1 American Law of Property (1952) §3.11; 3 American Law of Property, §12.58; 1 Farnsworth on Contracts (4th ed. 2019), §2.19; 1 Williston on Contracts (4th ed. 2007), §§2:2, 2:5. Again, this Court's opinion in *Tipton* provides some useful references as to the historical use of seals under Maryland law and we need not repeat that discussion in its entirety here. *See* 364 Md. at 425-34.

Thus, historically, a residential lease typically was made under seal. Yet an action to collect back rent under that lease was subject to a three-year period of limitations. That remained true if the lease was entered into and the action was brought when the State adopted its first constitution in 1776, when Abraham Lincoln was president in the mid-1800s, when Babe Ruth was born in Baltimore at the turn of the next century, or when humankind first stepped onto the moon 50 years ago. In 1972, this Court observed that "[t]here is … authority for the proposition that since recovery of arrearages of rent is specifically mentioned in [the predecessor of CJ §5-101] and not in [the predecessor of CJ §5-102], a lease cannot be regarded as a specialty to which [CJ §5-102] applies." *Henry's Drive-In, Inc. v. Pappas*, 264 Md. 422, 430 (1972);[8] *see also Tipton*, 364 Md. at 438 ("prior

---

[8] The Dissenting Opinion characterizes this observation in *Henry's Drive-In* as dicta. Dissenting Opinion at 1, 9-10. The statement in *Henry's Drive-In* is neither a holding nor dicta, but rather a summary of the understanding of the limitations period relating to back rent actions as of the early 1970s – a summary that, as noted in the text, was repeated in *Tipton* and that is not seriously disputed by Wakefield.

to 1973, the Legislature treated the recovery of accrued rent under *all* lease agreements as being within the confines of [the predecessor of CJ §5-101]") (emphasis in original).

Wakefield essentially argues that the landscape is different now. Has anything changed during the last 50 years that would override the longstanding legislative policy decision and allow the period of limitations applicable to an action for back rent to quadruple from three years to 12 years? To consider the answer to that question requires a brief excursion into the early days of the latest round of code revision, which began nearly 50 years ago.

2. The Landscape After Code Revision

Code revision is a periodic process by which statutory law is re-organized and restated with the goal of making it more accessible and understandable to those who must abide by it. *See generally* Alan M. Wilner, *Blame it all on Nero:  Code Creation and Revision in Maryland* (1994) (recounting the history of code revision in Maryland). Changes made in code revision are presumed to make clear the existing meaning of the statutory law rather than to change its meaning. This Court has long emphasized that "a change in a statute as part of a general recodification will ordinarily not be deemed to modify the law unless the change is such that the intention of the Legislature to modify the law is unmistakable." *Blevins v. Baltimore County*, 352 Md. 620, 642 (1999) (citations, internal quotation marks, and emphasis omitted).

The most recent code revision project began in the early 1970s. Two concurrent parts of that project are relevant to this case:  (1) the consolidation of many laws relating to periods of limitations in Title 5 of a new Courts & Judicial Proceedings Article; and (2)

13

the revision of statutes relating to real property in Article 21 of the Maryland Code and its recodification in the new Real Property Article.

*The Courts and Judicial Proceedings Article*

In 1973, the General Assembly enacted the new Courts & Judicial Proceedings Article, which became effective on January 1, 1974. Chapter 2, §§18, 21, First Special Session, Laws of Maryland 1973. As with code revision generally, the revisors who drafted the new article had "[t]he onerous task of clarifying the logical relationship among code provisions related to the judicial system, while avoiding any substantive change in these provisions…." William H. Adkins II, *Code Revision in Maryland: The Courts and Judicial Proceedings Article*, 34 Md. L. Rev. 7, 9 (1974).

Title 5 of the new article, entitled "Limitations and Prohibited Actions," consolidated various statutes of limitations. CJ §5-101 stated a general three-year period of limitations.[9] CJ §5-102 provided a 12-year period of limitations for "specialties."

The Revisor's Note to CJ §5-101 stated that it was new language derived from Article 57, §1, which had specified a three-year period of limitations for, among other things, actions for rent arrearages. The Revisor's Note explained the simplified format of the new section: "Rather than listing the various forms of action, it is decided that a blanket three year provision, with exceptions for other limitations, be substituted." Chapter 2, First Special Session, Laws of Maryland 1973 at 204. The Revisors further explained:

---

[9] The original language of CJ §5-101 has not been amended since its enactment 45 years ago.

"Apparently the legislature intended to cover all causes of action existing in 1729 when this section was enacted, subject to certain exceptions. It is believed that this section effectuates this intention in an updated fashion." *Id*. at 205-6.

The Revisor's Note to CJ §5-102 stated that it was derived from former Article 57, §3, which had formerly listed specialty actions subject to a 12-year period of limitations. *Id*. at 206-7. That Note indicated that the recodification had deleted mention of two specialties listed in the former statute, apparently on the theory that such actions no longer existed, but if they did, would be captured by a catch-all category in the definition of "specialty." *Id*.

In a law review article about the new code article, the director of the code revision commission highlighted that Subtitle 1, covering both §§5-101 and 5-102, "contain[ed] a few minor substantive changes." William H. Adkins II, *Code Revision in Maryland: The Courts and Judicial Proceedings Article*, 34 Md. L. Rev. 7, 33 (1974).[10] But these minor substantive changes had nothing to do with arrearages for rent.[11] Thus, code revision left the statute of limitations for that cause of action unchanged.

---

[10] Director Adkins would later be appointed a judge of the Court of Special Appeals in 1982 and a judge of this Court in 1986.

[11] Director Adkins explained these changes: "all officers' bonds rather than only those of sheriffs and constables have been excluded from the twelve-year limitation provision of section 5-102," and the "one-month period of limitations for instituting a prosecution for blasphemy, has been dropped, since the statute establishing the crime of blasphemy was held unconstitutional in *State v. West*." 34 Md. L. Rev. at 33.

*Article 21 and the Real Property Article*

Contemporaneously with the recodification of limitations statutes in the new Courts & Judicial Proceedings Article, a project was also afoot to revise the statutes relating to real property, including those concerning leases. In 1972, the General Assembly enacted a comprehensive revision of Article 21 of the Maryland Code, entitled "Conveyancing," in the same format adopted for code revision and with a new title – "Real Property." Chapter 349, Laws of Maryland 1972. Two years later, the revised Article 21 was adopted with minor changes (together with a few provisions transferred from other articles) as the new Real Property Article ("RP"). Chapter 12, Laws of Maryland 1974. As part of the 1972 revision, the Legislature eliminated the requirement of a seal for conveyances of real property and leases. *See* Maryland Code, Article 21, §4-101 (1972). Consistent with that decision, the statutory form for a lease no longer indicated that it was under seal. *See* Maryland Code, Article 21, §4-202 (1972). The commentary provided by the drafters of the 1972 revision of Article 21 confirmed that the revision intended to eliminate the custom of executing leases and other instruments under seal. *See* Maryland Code, Article 21, Title IV (1973 Repl. Vol.) at pp. 225-26.[12]

---

[12] The members of the Code Revision Committee of the Section of Real Property, Planning and Zoning Law of the Maryland State Bar Association were the principal drafters of the 1972 revision. Although the committee's commentary to that enactment does not appear in the session laws, it was reprinted in the 1973 Replacement Volume for Volume 2A of the Annotated Code of Maryland.

3.      Revision of the Landlord-Tenant Law

Coincident with the early years of code revision that produced the Courts and Judicial Proceedings Article and the Real Property Article, the General Assembly also revised the landlord-tenant law applicable to residential leases.  In particular, it enacted RP §8-208, which enumerates certain protections for tenants.  *See* Chapter 375, Laws of Maryland 1974.  Among those protections was an anti-waiver provision now codified, with minor amendments, in RP §8-208(d)(2):

> (d)  A landlord may not use a lease or form of lease containing any provision that:
>
> * * *
>
> (2)     Has the tenant agree to waive or to forego any right or remedy provided by applicable law;

Any provision in a lease prohibited by this section is unenforceable.  RP §8-208(g).

Like similar statutes in other states, RP §8-208 and related provisions were part of what some have referred to as a "revolution" in landlord-tenant law during the 1960s and 1970s that resulted in greater statutory protections for tenants.  *See* Mary Ann Glendon, *The Transformation of American Landlord-Tenant Law*, 23 B. C. L. Rev. 503 (1982); Tom G. Guerts, *The Historical Development of the Lease in Residential Real Estate*, 32 Real Est. L. J. 356 (2004).  Landlord-tenant law originally derived from a feudal relationship in an agrarian setting under which a tenant was a relatively powerless employee who depended on the landlord for living quarters as well as livelihood.  Guerts, 32 Real Est. L. J. at 357-58.  Over the centuries, the law re-defined that relationship, melding principles of real property and contract law through court decision and more recently defining certain

17

rights by statute, especially in the context of residential leases. *See generally* Glendon*, supra*; Guerts*, supra*; *see also* Douglas M. Bregman, Maryland Landlord-Tenant Law: Practice and Procedure (4th ed. 2009) at 1-13. In modernizing landlord-tenant law, developments like the Uniform Residential Landlord and Tenant Act (1972) ("1972 URLTA"), 7B Uniform Laws Annotated (2018) at 275, and similar legislative reforms in Maryland attempted to, if not equalize the relationship, at least put it on a new legal footing.

An anti-waiver provision like RP §8-208(d)(2) is common to many landlord-tenant laws. *See, e.g.,* 1972 URLTA, §1.403, 7B Uniform Laws Annotated (2018) at 305.[13] While many such provisions preclude a waiver of rights specifically conferred by a landlord-tenant act, the Maryland provision is broader, as it bars lease provisions under which a tenant would waive or forgo rights or remedies under any "applicable law." An anti-waiver provision like RP §8-208(d)(2) to some extent neutralizes the superior bargaining power that a landlord might have by precluding lease provisions that reverse tenant protections enacted by the Legislature. Glendon, 23 B. C. L. Rev. at 548-49.

4.      The *Tipton* Dicta

As indicated above, the third iteration of the holding in *Tipton* suggested that a 12-year period of limitations could apply to an action for back rent under a residential lease if "the parties to the lease agree, in the body of the lease, that the lease is subject to the twelve-

---

[13] The commentary to the 1972 URLTA provision states: "Rental Agreements are often executed on forms provided by landlords, and some contain adhesion clauses the use of which is prohibited by this section." 7B Uniform Laws Annotated (2018) at 306.

year limitation period of section 5-102."[14]  Of course, that statement did not apply to the case before the Court and therefore was dicta.  Although the purpose of this dicta is not clear, it is evident that the Court could not have been conclusively deciding the question of whether CJ §5-102 could apply to an action for back rent arising from a residential lease, as the Court explicitly declined to decide, and left for another day, the question of whether a 12-year period of limitations would be contrary to RP §8-208(d)(2).

The reasoning that underlies the actual holding in *Tipton* points to a conclusion contrary to that which Wakefield wishes us to draw – at least in the absence of legislative action.  The *Tipton* Court reviewed the case law and legislative history and determined that CJ §5-101, rather than CJ §5-102, was applicable in that case.  It noted that "since 1715 … all claims for rent arrears have been subject to a three-year statute of limitations," and concluded the analysis section by highlighting that a "clear intent of the legislature to substantively modify the law is missing from the legislative history of the relevant statutes at issue in the case *sub judice*."  In other words, the law had always applied a three-year statute of limitations to back rent claims, and there is no legislative history suggesting that the Legislature had intended to change that longstanding period of limitations.  Contrary

---

[14] Wakefield states that it relied on the *Tipton* dicta when it included the paragraph concerning the period of limitations in the preprinted standard lease conditions incorporated in its lease with Mr. Smith.  We certainly have no reason to doubt that assertion.  The extent to which other landlords have relied on *Tipton* to devise a lease condition to modify the period of limitations for back rent actions is less clear.  A relatively recent publication containing several model residential leases does not include such a provision in any of its model lease forms.  *See* Douglas M. Bregman, *Landlord and Tenant*, Maryland State Bar Association, 1 Practice Manual for the Maryland Lawyer (4th ed. 2012), Chapter 10.

to the notion that *Tipton* created a road map for quadrupling the statute of limitations for residential leases, the analysis in that opinion all but closed the door to the possibility that residential leases could ever become a specialty without further legislative action.

5.    Summary

Prior to the early 1970s, residential leases were commonly executed under seal, and an action for back rent owed under such a lease had to be filed within a three-year statute of limitations. The largely non-substantive revision of the statutes governing limitations periods retained that three-year period of limitations for such actions. The concurrent revision of the statutes governing real property eliminated the need for a seal in residential leases. As the Court noted in *Tipton*, there is no indication in the code revision of the early 1970s that the Legislature intended to provide for an extension of the longstanding three-year period of limitations for back rent actions. Indeed, it would seem odd to conclude that a landlord's decision to add an unnecessary seal to a residential lease form – or an additional sentence that invoked the concept of a "contract under seal" – would quadruple that period of limitations when the previous use of the seal in such leases did not signify a longer period of limitations. Moreover, such a conclusion is at odds with legislative enactments contemporaneous with the code revision of the early 1970s that expanded protections for residential tenants and precluded waiver of those protections in a lease. In the absence of legislative action, the reasoning of the Court in *Tipton* does not counsel otherwise.[15]

---

[15] Wakefield argues (and the Dissenting Opinion adopts the argument) that legislative inaction inures in Wakefield's favor. It points to recent proposed legislation

So the "road map" does not get Wakefield to where it wants to go. There may be an alternative route to the result that Wakefield seeks – a more generous period of limitations for a landlord seeking to collect back rent from a residential tenant. Like a contemporary navigational device, *Tipton* may offer a way to re-route. We consider that alternative path in the next section of this opinion.

### C.  *Whether There Was an Enforceable Agreement to Alter the Statute of Limitations*

As noted earlier, the Court in *Tipton* observed, in the first two statements of its holding, that parties to a contract may agree to waive a statute of limitations. 364 Md. at 422 n.3, 425 n.9. Other than stating that "[g]enerally, affixation of a seal, alone, will not constitute such a waiver," the Court did not explicitly discuss the concept of waiver with respect to the facts of the case before it. However, the dicta at the conclusion of the opinion

---

that, in several different ways, would have made clear that the 12-year period of limitations for specialties in CJ §5-102 does not apply to a residential lease or, in some bills, to anything defined as a "consumer contract." *See* Senate Bill 837 (2018), House Bill 635 (2018); Senate Bill 1077 (2017), House Bill 994 (2017); House Bill 971 (2016). None of those bills passed the General Assembly and Wakefield infers that the General Assembly therefore intended to allow an extension of the longstanding period of limitations governing actions for back rent from three years to 12 years.

However, the General Assembly's recent decision not to pass a particular bill does not alter the intent of past sessions of the Legislature when it initially adopted the three-year period of limitations for rent arrearage actions in 1715, and repeatedly retained that period of limitations in subsequent recodifications. Nor does it alter the understanding of the Legislature that retained that period of limitations in the recodification in the 1970s. No action by the General Assembly since that recodification has evidenced any intent to enlarge the period of limitations for actions for back rent. In that context, reliance on the General Assembly's inaction on bills that, in many respects, confirm existing law seems a "weak reed" on which to rely. *E.g., Automobile Trade Ass'n of Maryland, Inc. v. Insurance Commissioner*, 292 Md. 15, 24 (1981).

21

might be understood as the Court's speculation as to how parties might waive the three-year period of limitations in CJ §5-101 and extend the period of limitations by doing something other than simply affixing a seal. At the time it decided *Tipton*, the Court did not have the benefit of our subsequent decision in *Ceccone v. Carroll Home Services, LLC*, 454 Md. 680 (2017), concerning modification of an otherwise applicable limitations period by agreement.

The *Ceccone* case concerned an action brought with respect to a service contract for a residential heating system. Although the question in that case was whether the relevant period of limitations could be shortened from three years (as provided in statute) to one year (as provided in the contract), the Court discussed the criteria for recognizing any private agreement to alter a statutory period of limitations. Endorsing a formula offered in a prior opinion of the Court of Special Appeals, this Court held that parties may agree to a provision that modifies the period of limitations that would otherwise apply to a cause of action, provided (1) there is no controlling statute to the contrary, (2) the modification is reasonable, and (3) the modification is not subject to other defenses such as fraud, duress, or misrepresentation. 454 Md. at 693-94.

With respect to the first issue – whether there is a controlling statute that precludes waiver of the three-year statute of limitations – Mr. Smith points to RP §8-208(d)(2). As noted earlier, that statute provides, in pertinent part, that a lease may not provide that "the tenant agree to waive or to forego any right or remedy provided by applicable law." Whether an extension of the three-year period of limitations for a back rent action is precluded by RP §8-208(d) was one of the questions raised, but not answered, in *Tipton*.

22

The longstanding three-year period of limitations for a back rent action based on a residential lease is clearly "provided by applicable law" – CJ §5-101 and its predecessors.[16] The question is whether it is a "right or remedy."  It does not appear to fit the ordinary definition of "remedy."[17]  The statute of limitations may be considered a "right," however, in the sense that it confers on a potential defendant the right to be free of litigation based on the particular cause of action.

Even if RP §8-208(d) did not preclude an agreement to extend the statute of limitations pertinent to such actions, there remains the question of whether such an extension is reasonable in circumstances such as these.  In *Ceccone*, the Court suggested that the following factors bear on that question:  the length of the modified period of limitations, its relation to the statutory period, the relative bargaining power of the parties, the subject matter of the contract, and whether the modification is one-sided in effect, among other things.  454 Md. at 697-98.

Here the modification would quadruple the period of time within which an action for back rent could be brought – from three years to 12 years.  Notably, in this case, the matter did not come to trial until nearly a decade after the termination of the lease.  Many businesses or government agencies would not have retained records relating to a

_____

[16] Wakefield argues that the "applicable law" for purposes of limitations is not CJ §5-101, but rather CJ §5-102 – an argument that seems to lift itself by its own bootstraps. For the reasons set forth in the previous section of this opinion, we disagree.

[17] A popular legal dictionary defines "remedy" generally as "[t]he means of enforcing a right or preventing or redressing a wrong; legal or equitable relief."  Black's Law Dictionary (10th ed. 2014).

contractual relationship that ended so long ago. It seems even more unlikely that an individual tenant like Mr. Smith would have retained the necessary records to defend against such a claim.

With respect to the relative bargaining power of the parties, this Court has acknowledged that residential leases are less likely to be the product of arms-length negotiation than commercial leases. *See Lockett v. Blue Ocean Bristol, LLC*, 446 Md. 397, 419 (2016). In this case, the lease provision lengthening the period of limitations appears in a preprinted form addendum to the lease. There is no apparent option for the tenant to opt out of it when entering into the lease. While the modification is not one-sided on its face, we have not been pointed to any potential action that a tenant would likely bring under the lease a decade after its termination. In our view, the effect of this provision is to quadruple the period of time for the landlord to pursue a collection action for back rent, without providing any similar benefit to the other party to the contract.

Finally, the subject matter of the contract – rental of a housing unit – is unlikely to generate causes of action for which an extended period of limitations would be necessary. For example, the basis for an action for back rent – failure to pay rent – will be known immediately to the injured party and is unlikely to require extensive investigation. In our view, a nine-year extension of the period for bringing a back rent action is not a reasonable modification of the applicable period of limitations chosen by the Legislature.[18]

---

[18] In light of this conclusion, we need not consider the third condition for an enforceable agreement modifying a statute of limitations. In any event, we note that there is no allegation of fraud, duress, or misrepresentation by Wakefield.

24

In sum, even if the preprinted paragraph of the lease addendum in this case were considered an agreement to modify the period of limitations, it is not enforceable.

## III

## Conclusion

Sometimes, when a court says more than is necessary to decide a case, what is unnecessary is also unexamined and not always a good predictor of future decisions. Perhaps that is why courts tend to discount dicta and eschew advisory opinions. The Court in *Tipton* thoroughly analyzed the issue before it and we adhere to its holding in that case; however, we do not adopt its suggestion as to how to decide a future case like this one.

For the reasons explained above, we hold:

(1)     The three-year period of limitations set forth in CJ §5-101 governs actions for back rent under residential leases, regardless of whether the lease includes provisions that purport to convert it into a contract under seal.

(2)     The three-year period of limitations that applies to a back rent action under a residential lease is not subject to waiver, in light of RP §8-208(d)(2).

> **JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED AND CASE REMANDED TO THAT COURT WITH DIRECTION TO DISMISS THE COMPLAINT. COSTS TO BE PAID BY RESPONDENT.**

Circuit Court for Baltimore City
Case No. 24-C-18-000566
Argued: November 5, 2018

IN THE COURT OF APPEALS
OF MARYLAND

No. 28

September Term, 2018

_____

GREGORY SMITH

v.

WAKEFIELD, LP

_____

Barbera, C.J.
Greene,
McDonald,
Watts,
Hotten,
Getty,
Adkins, Sally D.
(Senior Judge, Specially Assigned)

JJ.

_____

Dissenting Opinion by Getty, J., which Adkins,
J., joins

_____

Filed: February 27, 2019

I respectfully dissent from the Majority's conclusion that the lease entered into between Gregory Smith and Wakefield, LP is not a contract under seal and therefore not a specialty contract subject to a twelve-year statute of limitations pursuant to § 5-102 of the Courts and Judicial Proceedings Article ("CJ").

Under the facts of this case, I agree with the decisions reached by the District Court of Maryland for Baltimore City and the Circuit Court for Baltimore City that squarely applied the precedent that this Court set forth in *Tipton*. Moreover, the policy decision to except residential leases from specialty status is properly within the authority of the General Assembly and not this Court. I also find unpersuasive the Majority's conclusion that, although CJ § 5-101 no longer specifically references residential leases as did its statutory predecessor, residential leases have been subject to a three-year statute of limitations based on this Court's decision in *Henry's Drive-In, Inc. v. Pappas*, 264 Md. 422, 430-31 (1972). In my view, the Majority relies upon dicta from *Henry's Drive-In*, that is inclusive because it can be interpreted to support both positions, i.e. either treating residential leases as specialties subject to the twelve-year statute of limitations or applying the blanket three-year statute of limitations.

To explain my dissent, I begin with the precedent on specialty contracts that has been clearly articulated by this Court.

## A.     *What is a Contract Under Seal?*

The term "specialty" is not defined within the controlling statute, CJ § 5-102, nor elsewhere within the Maryland Code. *See Gildenhorn v. Columbia Real Estate Title Ins. Co.*, 271 Md. 387, 398 (1974).

Previously, this Court has held that including the word "seal" within a preprinted form that acted as a guaranty to a public utility company was sufficient to transform the agreement into a contract under seal. *Warfield v. Baltimore Gas and Electric Company*, 307 Md. 142, 147-48 (1986). Although the body of the instrument did not demonstrate an intent to form a contract under seal, the *Warfield* Court indicated that there was no contrary intention manifested within the instrument. *Warfield*, 307 Md. at 1. The Court commented,

> [i]f the contract is signed by an individual opposite and in obvious relation to a legally sufficient seal, the instrument will be taken as a sealed document, where there is nothing on the face of the paper to indicate the contrary even though there be no reference to the seal in the wording of the paper.

*Warfield*, 307 Md. at 143.

Consistently, this Court (and others interpreting Maryland law) has concluded that the word "seal" impressed or printed adjacent to the parties' signatures on an agreement was sufficient to render an ordinary contract into a contract under seal and therefore a specialty. *General Petroleum Corp. v. Seaboard Terminals Corp.*, 23 F. Supp. 137, 139 (D. Md. 1938) (holding that an instrument including a seal, coupled with sufficient extrinsic evidence to establish an intent to enter into a contract under seal, was sufficient to transform a guaranty into a contract under seal.); *Trasher v. Everhart*, 3 G.&J. 234, 246 (1831) ("for whether an instrument be a specialty, must always be determined by the fact, whether the party affixed a seal; not upon the assertion of the obligor, in the body of the instrument, or by the form of the attestation.")

However, this Court has recognized a distinction for corporations that simply affixing a corporate seal is not enough to render an agreement into a contract under seal

2

and therefore a specialty contract. *Mayor of Federalsburg v. Allied Contractors*, 275 Md. 151, *cert. denied*, 423 U.S. 1017 (1975). In that case, this Court indicated that for corporations the presence of a corporate seal within an instrument is not dispositive as to whether that instrument is a contract under seal and thereby a specialty contract. *Id.* at 154-56.

The *Allied Contractors* Court held that a contract under seal may be established by: (1) an instrument with a seal impressed or printed onto it; and either (2) language in its body that evinces the parties' intent to form a contract under seal; or (3) the parties submit sufficient extrinsic evidence from which a court can establish that they intended the instrument to be a contract under seal. *Id.* at 155-56. This interpretation follows the precedent established by earlier decisions of this Court. *See Gildenhorn*, 271 Md. at 399-404; *Smith v. Woman's Med. Coll. of Balt. City*, 110 Md. 441, 445-446 (1909). Thus, for over one hundred years, this Court has held that instruments which contain a seal and demonstrate an intent to form a contract under seal by text within the body of the instrument or by extrinsic evidence are contracts under seal and therefore specialties subject to the twelve-year limitations period.

More recently, in *Tipton v. Partner's Mgmt. Co.*, we reiterated that a residential lease containing seals adjacent to the parties' signatures, combined with a demonstrable intention to create a contract under seal indicated within the body of the instrument, establishes an instrument as a contract under seal and therefore a specialty. 364 Md. 419, 445 (2001). Mr. Smith argued and the Majority found persuasive the proposition that this language in *Tipton* is merely dicta and should not influence the legal analysis of this case.

3

However, the Tipton Court clearly stated the following:

We hold that claims for arrearages of rent under a residential lease, even a lease to which a seal is affixed, must be filed within the three-year limitation period unless the parties agree, in the body of the lease, that the lease is subject to the twelve-year limitation period of section 5-102.

*Id.* While the status of this language as dicta is ultimately debatable, it is undisputable that this language clearly set forth guidance from this Court for those that wished to establish a residential lease under seal. Now, in their opinion, the Majority concludes that any reliance upon this language is ultimately unjustified. Majority Slip Op. at 19-20. The Majority relies on *Tipton* for the proposition that the statutory framework surrounding leases and the associated statutes of limitation did not change throughout recodification. Majority Slip Op. at 6 n. 3. However, if this was the case, it is inconsistent that the *Tipton* Court then offered guidance that residential leases may be transformed into specialties and therefore subject to the associated twelve-year statute of limitations.

In consideration of the common-law definition of a contract under seal, it becomes evident that all the hallmarks of a contract under seal are present within the lease at issue in the instant appeal. First, the lease contained the word "Seal" adjacent to the signatures of the parties. Second, the body of the lease indicated that "[t]his [l]ease is under seal and is subject to the twelve-year limitations period of Section 5-102 of the Courts & Judicial proceedings Article of the Annotated Code of Maryland."

Therefore, Wakefield in crafting their residential leases abided by the construct established by this Court as set forth in *Tipton*. Specifically, the lease's direct references to CJ § 5-102 and the twelve-year limitations period mirror the procedure announced in

4

*Tipton* identically. It is obvious that counsel involved in drafting this lease was aware of the precedent established by this Court and relied on it to fashion this residential lease into a legitimate contract under seal and therefore a specialty contract.[1]

In addition, the clause contained within the lease aligns directly with this Court's earlier holdings that a contract under seal requires the affixation or impression of a seal to an instrument and language within the body of an instrument which evinces an intent to create a contract under seal. *Allied Contractors*, 275 Md. at 155-56; *Levin v. Friedman*, 271 Md. 438, 443 (1974); *Gildenhorn*, 271 Md. at 399-404; *Woman's Medical Coll. of Balt. City*, 110 Md. at 445-46. Clearly, the lease in question contained seals and a provision that referenced CJ § 5-102. Together, these features adequately demonstrate the parties' intent to enter into a contract under seal. Furthermore, the Majority's conclusion that the lease in question was not a contract under seal and thereby a specialty is inapposite.

**B.     *While the General Assembly Has Enacted Exceptions to the Specialty Contract Statute of Limitations, It Has Failed to Include Residential Leases Within Those Exceptions.***

While this Court has the authority to interpret statutes enacted by the state legislature, the ultimate power to enact and amend such statutes rests with the General Assembly. *Consolidated Eng'g Co., Inc. v. Cooper*, 246 Md. 610, 615 (1967); *Lickel v. Boone*, 187 Md. 579, 585 (1947) ("This Court cannot enact legislation, but can only

---

[1] As noted by the Majority, the organization that entered into the lease on Wakefield's behalf was a successor to the management company involved in *Tipton*. *See* Majority Slip Op at 8 n. 6.

5

administer justice according to existing law."). In contrast to statutory interpretation, the Majority's opinion attempts to modify a statutory provision (e.g. CJ § 5-102) by inserting an exception for residential leases whereby the twelve-year statute of limitations for specialty contracts is now inapplicable, even if the lease is appropriately formed as a contract under seal. Majority Slip Op. at 21-25.

Previously, this Court has considered the policy underlying statutes of limitations generally and commented:

> Statutes of limitations are designed to balance the competing interest of plaintiffs, defendants, and the public. *A statutory period of limitations represents a policy judgment by the Legislature* that serves the interest of a plaintiff in having adequate time to investigate a cause of action and file suit, the interest of a defendant in having certainty that there will not be a need to respond to a potential claim that has been unreasonably delayed, and the general interest of society in judicial economy.

*Ceccone v. Carroll Home Servs., LLC*, 454 Md. 680, 691 (2017) (emphasis added).

Accordingly, this Court has found that a determination of the applicable statute of limitations as to a particular cause of action is one which is rightfully left to the General Assembly and is not within the purview of this Court to determine. Moreover, courts do not have the authority to fashion exceptions to statute of limitations as this is also within the purview of the General Assembly. *Swam v. Upper Chesapeake Med. Ctr., Inc.*, 397 Md. 528, 555 (2007).

On this issue, this Court has consistently stated "[w]here the legislature has not made an exception in express words in the Statute of Limitations, the Court cannot allow any implied and equitable exception to be engrafted upon the statute merely on the ground that such exception would be within the spirit or reason of the statute." *McMahan v.*

*Dorchester Fertilizer Co.*, 184 Md. 155, 160 (1944). *See also Hecht v. Resolution Trust Corp.*, 333 Md. 324, 333 (1994); *Booth Glass Co. v. Huntingfield Corp.*, 304 Md. 615, 623 (1985); *Walko Corp. v. Burger Chef Sys., Inc.*, 281 Md. 207, 215 (1977). Clearly, excepting residential leases from specialty status is an appropriate task for the General Assembly and not this Court.

It is true that the General Assembly has wrestled with this very issue. In 2014, it passed legislation to except certain agreements from the twelve-year limitations period of CJ § 5-102(a). Specifically, the new statute excepted "[a] deed of trust, mortgage, or promissory note that has been signed under seal and secures or is secured by owner-occupied residential property. . ." 2014 Md. Laws ch. 592; CJ § 5-102(c)(2). Essentially, the General Assembly determined that parties should not be able to transform these three instruments, in situations where they are secured by residences, into contracts under seal. Thus, the twelve-year limitations period of CJ § 5-102(a) shall not apply to these specific items. Yet, the General Assembly did not include a residential lease exception in the 2014 legislation even though this Court's opinion in *Tipton*, which indicated that a residential lease properly formulated as a contract under seal would be subject to the twelve-year limitations period of CJ § 5-101, had been decided thirteen years earlier.

Essentially, the Majority's opinion engrafts upon CJ § 5-102(c) a new residential lease exception absent any indication of the General Assembly's intent to enact such an exception. In fact, bills to craft a residential lease carve-out have been introduced during the 2016 and 2017 sessions of the legislature but have failed. *See* H.B. 971, 2016 Leg., 436th Sess. (Md. 2016); S.B. 1077 and H.B. 994, 2017 Leg., 437th Sess. (Md. 2017). This

7

Court has previously explained a bill's failure within the General Assembly is "a rather weak reed upon which to lean in ascertaining [the General Assembly's] intent" because there may be a host of reasons for the failure of a particular bill. *NVR Mortg. Finance, Inc. v. Carlsen*, 439 Md. 427, 438 (2014) (quoting *City of Balt. Dev. Corp. v. Carmel Realty Assocs.*, 395 Md. 299, 329 (2006)). However, the fiscal note for these bills specifically cited this Court's ruling in *Tipton* as the impetus to introduce the bill that would provide the new exception for residential leases:

> In *Tipton v. Partner's Management Co.*, 364 Md. 419 (2001), the Maryland Court of Appeals held that even though a residential lease agreement had the word "seal" printed on it, the agreement was subject to the three-year statute of limitations for simple contracts under § 5-101 of the Courts and Judicial Proceedings Article, not the 12-year statute of limitations for specialty instruments under § 5-102 of the Courts and Judicial Proceedings [sic]. However, the court also noted that the 12-year statute of limitations under § 5-102 would apply if the parties agreed to that statute of limitations in the body of the lease.

Dep't Fiscal Servs., *Fiscal and Policy Note, House Bill 971*, at 2 (2016 Session).

Clearly the fiscal note indicates that the twelve-year statute of limitations applies for the specialty of a residential lease under seal with language in its body that evinces an intent to create a contract under seal. Further, this legislation's failure, as a direct response to this Court's decision in *Tipton*, strengthens the generally "weak reed" of statutory interpretation. *NVR Mortg. Finance, Inc.*, 439 Md. at 438. Only by passing such legislation would the General Assembly be demonstrating its intent that the three-year statute of limitations applies to any kind of residential lease.

The Majority takes the position that since residential leases were specifically included under Art. 27 § 1, any change through recodification in the language of its

8

statutory successor, CJ § 5-101, did not change the applicability of a three-year statute of limitations to residential leases. However, on this point, the Majority finds clarity where things are murky at best. To support its position, the Majority relies on *Henry's Drive-In, Inc.*, but neglects portions of that opinion which demonstrate context and indicate the cited language is clearly dicta. 264 Md. 422 (1972); Majority Slip Op. at 13. The context of this language is as follows:

> The resolution of the problems posed by this case would have been infinitely more difficult were it not for a concessum made by the Lessor's counsel at oral argument. The 1959 lease was under seal, and **it could be argued** that the Lessor's right to demand excess rent from Maryland Henry's, and **Maryland Henry's right to claim a credit for interest on the security deposit, might be governed by the 12 year period of limitations made applicable to specialties by Code, Art. 57, s 3** and not by the three year period provided for by Art. 57, s 1. There is, however, authority for the proposition that since recovery of arrearages of rent is specifically mentioned in s 1 and not in s 3, a lease cannot be regarded as a specialty to which s 3 applies, *Towson Gardens, Inc. v. Small et ux.*, Law No. 6984-11-16 (Cir.Ct. Harford County, decided 18 March 1968) (*Daily Record*, Baltimore, 25 May 1968); see also 1 Wood, *Limitation of Actions* s 32, at 126 (4th ed. 1916). However, as we have noted, no appeal was taken by Maryland Henry's.

*Id.* at 430-31 (emphasis added).

As evident, the Court's comment about whether the 12-year statute of limitations applied was not before the Court because this language did not concern arguments brought by either party but instead were speculative and referenced a party not even involved in that appeal. Accordingly, the Majority ultimately relies on dicta far more removed from the underlying action than the dicta in *Tipton*. Overall, the Majority's rejection of the dicta in *Tipton*, while relying on dicta from *Henry's Drive-In*, *Inc.* for the proposition that undergirds much of their argument is inconsistent. Next, I turn to the question of whether

9

statutes of limitations constitute a right or remedy under § 8-208 of the Real Property Article ("RP").

## C.   *RP § 8-208 Does Not Prohibit Lengthening the Limitations Period in a Residential Lease.*

As noted by the Majority, RP § 8-208(d) limits the types of permissible provisions a landlord may insert into a lease. More specifically, the statute provides that landlords may not include provisions in leases that "ha[ve] the tenant agree to waive or forego any right or remedy provided by applicable law[.]" RP § 8-208(d)(2). Thus, the question of whether the statute of limitations for a particular claim constitutes a "right or remedy" within the meaning of RP § 8-208(d)(2) remains. Despite the Majority's conclusion on this point, Maryland courts have repeatedly indicated that statutes of limitations are procedural in nature, rather than rights or remedies. *State v. Smith*, 443 Md. 572, 594 (2015) ("this Court has held that such procedural statutes (e.g. statutes that change a statute of limitations) operate retrospectively."); *Doughty v. Prettyman*, 219 Md. 83, 88 (1959) ("Included in the procedural matters governed by the law of this state is the statute of limitations."); *Roe v. Doe*, 193 Md. App. 558, 577-78 (2010), *aff'd*, 419 Md. 687 (2011) ("a lengthened statute of limitations is 'procedural' – that is, it does not alter substantive rights. . . ."); *Hariq v. Johns—Manville Products Corp.*, 284 Md. 70, 75 (1978) ("Statutes of limitations are . . . a simple procedural mechanism to dispose of stale claims."). Therefore, the statute of limitations associated with a particular claim are not a right or remedy as contemplated by RP § 8-208(d)(2); rather, they are procedural mechanisms.

In certain other situations, it is quite evident that a contractual modification of the statute of limitations may limit an individual's potential remedies. To that end, this Court has noted that "[a] statute of limitations is a procedural device that operates as a defense to limit the remedy available from an existing cause of action." *SVF Riva Annapolis LLC v. Gilroy*, 459 Md. 632, 637 n.1 (2018) (quoting *First United Methodist Church of Hyattsville v. U.S. Gypsum Co.*, 882 F.2d 862, 865 (4th Cir. 1989)). Furthermore, the Majority's conclusion that "[t]he statute of limitations may be considered a 'right,' however, in the sense that it confers on a potential defendant the right to be free of litigation based on the particular cause of action[,]" is inapposite given the uncontroverted precedent above. Majority Slip Op. at 23. In sum, statutes of limitations are procedural mechanisms that may limit an individual's rights, but statutes of limitations do not constitute rights in and of themselves as the majority concludes. *Id.* Furthermore, the case *sub judice* is distinct in that it involves a clause which attempts to lengthen the statute of limitations.

It is simply untenable to conclude that the provision extending the statute of limitations to twelve years found within the lease in the present case is tantamount to an impermissible provision that waives a right or remedy pursuant to RP § 8-208(d)(2). The lease does not indicate that the extended limitations period only applies to Mr. Smith or Wakefield. Therefore, rather than limiting potential rights or remedies, the provision at issue has the potential to expand a tenant's rights or remedies, as a tenant would have twelve years (instead of three years) to bring any claims arising out of the lease against a landlord. Although the Majority indicates that it is unable to ascertain any situations in which a tenant would bring suit against a landlord "under the lease a decade after its

11

termination[,]" it does not follow that no such situations exist. Majority Slip Op. at 24. In sum, there is no conflict between the lease provision at issue and RP § 8-208(d)(2) because statutes of limitations are procedural devices and not rights. Therefore, RP § 8-208(d)(2) should not limit a landlord's ability to insert a provision within a lease that lengthens the statute of limitations for claims arising out of that lease.

In conclusion, the Majority's decision represents a departure from the precedent established by this Court in interpreting the statutes governing specialty contracts. The residential lease in this case fell squarely within the requirements of the statute as interpreted by this Court in *Tipton*. Any exception for the specialty of a residential lease under seal and with language within the body that evinces an intent to create a contract under seal from the twelve-year statute of limitations is a policy decision within the authority of the General Assembly and not this Court. For these reasons, I respectfully dissent from the Majority's decision.

Judge Adkins has authorized me to state that she joins in this opinion.